# THE STATE v. SHARP, Appellant.

### Division Two, July 2, 1904.

1. **WITNESS: Impeachment: Evidence of Prior Statements.** As a general rule evidence of prior statements made by a witness can not be introduced to support or corroborate his testimony. One of the exceptions to this rule is that where a witness, on the trial of a criminal case, has been discredited by his contradictory testimony on cross-examination, his testimony on direct examination may be sustained by a showing that he made to another person, soon after the commission of the offense, statements in harmony with those made by him on his direct examination.

2. ————: ————: ————: **This Case.** A witness for the State had testified on his direct examination that on the night of the killing he saw two men at the place where the killing occurred, whom he did not know at the time, but one of whom he afterwards learned was the defendant, and that he heard one of the men say to the other, "Come on, John, I told you I would kill him." On his cross-examination, when confronted by a deposition he had given in the case, he admitted that he had not said anything in the deposition about seeing the two men or hearing any words spoken. The State was then permitted, on rebuttal, to show that on the night of the homicide and when he had just come from the place where it occurred, the witness made to another person the statement that he had seen the two men and heard the words spoken. *Held*, that, the purpose of introducing the deposition being to impeach the witness by showing that his testimony at the trial was contradictory to his statements in the deposition with regard to the same matter, the case falls within the exception to the general rule that prior statements are inadmissible to corroborate the witness's testimony, and, therefore, the declarations of the witness made to another person were admissible.

3. ————: **Deposition: Endorsement of Justice: Harmless Error.** While the endorsement on the deposition of a witness, purporting to be the certificate of the justice of the peace, that the prosecuting attorney declined to cross-examine the witness at the time the deposition was taken, had nothing to do with the case and should not have been admitted in evidence, yet as it could in no way have prejudiced the rights of the defendant, its admission did not constitute reversible error.

State v. Sharp.

4. **APPELLATE PRACTICE: Impeachment of Witness: Question for Jury.** It is for the jury to weigh the evidence and to determine whether witnesses have been successfully impeached, and the appellate court will not usurp the province of the jury by undertaking to pass upon such questions.

5. **——: ——: Aggressor.** And, for the same reason, the appellate court will not undertake to say who was the aggressor in a difficulty, or whether a defendant had good reason to believe that the deceased intended to kill him or to inflict upon him, bodily harm.

6. **INSTRUCTIONS: Should Be Construed Together.** The instructions given for the State and those given for defendant should be read in connection with each other and where, when so read, statements which, standing alone, might be misleading, are cleared up, no error is committed.

7. **——: Withdrawing From Difficulty: Failure to Request Instruction.** If defendant desired an instruction upon the theory that he undertook to withdraw from and abandon the conflict, and that deceased followed him up, he should have requested such instruction or at the time called the court's attention to its failure to so instruct.

8. **——: Refusal to Give: No Exception.** Unless exceptions were saved at the time to the action of the trial court in refusing to give instructions, such action can not be considered on appeal.

9. **——: Manslaughter.** An instruction on manslaughter in the fourth degree, given by the court of its own motion, examined, and held to correctly state the law.

Appeal from Monroe Circuit Court.—*Hon. D. H. Eby,* Judge.

AFFIRMED.

*J. H. Whitecotton* for appellant.

(1) The court erred in permitting Mrs. Dooley to answer the question asked her by the State. (2) The court erred in permitting the endorsement on the deposition of witness Everett Dooley, purporting to be a certificate of Judge Moss that the prosecuting attorney declined to cross-examine the witness at the time deposition was taken. It was wholly immaterial whether the prose-

cuting witness was cross-examined or not, by the prosecuting attorney. The effect, however, of admitting the alleged certificate in evidence was to detract from the weight to be given to the deposition in passing upon the credibility of the witness. (3) Instructions 7a and 8 do not state the law correctly, and the jury should have been told that they must find that the defendant "brought on the difficulty or (voluntarily) entered into the difficulty," etc. State v. Gamble, 119 Mo. 427; State v. Evans, 124 Mo. 406. (4) There being no question as to there being testimony tending to show that if defendant even had an intention of "bringing on or entering into the difficulty," etc., he honestly attempted to withdraw from, and abandon the fight, and the deceased pursued him, instruction 2, given for the State, is clearly erroneous, and should not have been given unless modified to meet the testimony in the case. State v. Patterson, 159 Mo. 560; State v. Cable, 117 Mo. 385; State v. Partlow, 90 Mo. 608; 1 Bishop's Criminal Law (5 Ed.), sec. 871; Harriggan & Thompson on Self-Defense, p. 227; Foster, p. 276.

*Edward C. Crow,* Attorney-General, and *C. D. Corum* for the State.

(1) In his deposition the witness had stated that the defendant was not there when he reached the place. Counsel evidently expected to argue to the jury that the deposition was an impeachment of the witness's testimony at the trial, and the offer shows that the deposition was introduced for that purpose. It could have been competent for no other purpose. It will not do for the defendant to say now that the witness was not impeached by this deposition. The effect of the deposition was to charge the witness with a recent fabrication of his testimony. And under such circumstances it is competent to sustain the witness by proof that on other occasions his statements were in harmony with

those made at the trial. Wharton on Crim. Ev. (9 Ed.), sec. 492; Hobbs v. State, 133 Ind. 434; State v. Porter, 74 Ia. 623; English v. State, 30 Tex. Crim. App. 470; Sentell v. State, 34 Tex. Crim. Rep. 260; Fallon v. State, 83 Ala. 5; State v. Grant, 79 Mo. 113; State v. Hatfield, 72 Mo. 518; State v. Whelehon, 102 Mo. 17. (2) The instructions given covered all the questions of law arising in the case; but if not, an exception should have been saved at the time such failure occurred. It is too late to raise the question now. State v. Cantlin, 118 Mo. 111; State v. Vinso, 171 Mo. 576. (3) Defendant complains in his motion for a new trial of instruction 2, given on behalf and at the request of the State. We think the instruction is not liable to criticism. There was evidence tending to show that the defendant provoked the difficulty and began the quarrel with the purpose of taking advantage of the deceased, and of taking his life or doing him some great bodily harm. If this testimony was true, then there is no self-defense in the case, no matter how imminent the peril of the defendant may have become in consequence of any attack that the deceased might have made upon him. This theory was lucidly put in the instruction given and is warranted by the authorities. State v. Gilmore, 95 Mo. 554; State v. Davidson, 95 Mo. 155; State v. Partlow, 90 Mo. 608; State v. Parker, 96 Mo. 362; State v. Lewis, 118 Mo. 85; State v. Weeden, 133 Mo. 76; State v. Herrell, 97 Mo. 99. (4) Instruction 7, on manslaughter in the fourth degree, is a correct exposition of the law. State v. Vansant, 80 Mo. 67; State v. Kloss, 117 Mo. 591.

BURGESS, J.—From a conviction of murder in the second degree and fixing his punishment at ten years' imprisonment in the penitentiary, under an information filed by the prosecuting attorney of Monroe county in the circuit clerk's office of said county, charging defendant with murder in the first degree in shooting and killing with a pistol one Bob Stoneking at said county.

on the twenty-first day of December, 1901, defendant appeals.

The killing was admitted at the trial, and the plea of self-defense interposed.

The facts are about as follows:

On the evening of December 21, 1901, twelve boys and young men, including the deceased, left the town of Stoutsville for the purpose of skating on the north fork of Salt river near Elliott's bridge in Monroe county. They left the town in a body between six and seven o'clock when it was getting dark, but on the way they divided up into two parties, one going in advance of the other.

Sometime during the afternoon of that day the defendant and one Reed Thompson had a wordy controversy over some matter and got mad, after which, it seems, Thompson made some threats against the life of defendant. Thereafter defendant provided himself with a revolver. A short time after the party left Stoutsville defendant left for his home in the sled of a friend by the name of John Lovings. Following the sled leading defendant's horse was one Wallace Fredericks. It seems that their route took them near the place where the young men who left Stoutsville for the purpose were skating, and when they saw them, the defendant and Frederick started towards them, leaving Lovings in charge of the sled and team and horse. When the defendant approached the skaters, he began shaking hands with some of them, but when he extended his hand to the deceased he declined it and remarked, "Never mind my hand; I don't forget anything in five minutes." Defendant then said, "I don't either, I guess you took up with those boys in town this evening." Deceased replied, "You are G—d—d—m right, I did; I am a damn good man," and pulled off his skates. Defendant replied that he thought he was a pretty good man, and always tried to act the man. Stoneking then walked up to defendant and said, "If

you want any trouble you can have it right here," to which defendant replied, "I don't want to have any trouble, go away and leave me alone." Defendant admitted that he had a pistol. When defendant admitted that he had a pistol, the deceased put his hands up in a way indicated by a witness for the State, and started toward the defendant, and said, "You damned bastard, give me that gun, and I will fix you, God damn you." Defendant then threw up his hand and fired three shots in rapid succession, from the effects of which deceased fell dead upon the ice about twenty feet from the place where he was standing when shot.

Defendant testified that while at Stoutsville on the day of the homicide he heard that Bob Stoneking had made threats against his life, and that he thought it was a dangerous place to go up that way, that is, where the skaters were, and as it was near to the road he traveled in going home he procured a pistol. That when he came near the bridge which spans the river, he and one of the friends who were with him left the main road and crossed the river below the bridge for the purpose of watering their horses, and while doing so he looked up and saw a crowd of boys and started up there. He then testified as to what occurred up to the time that deceased pulled off his skates, substantially as has been stated. He then stated that when deceased pulled off his skates he said to him, defendant, "You God damned son-of-a-bitch, if you have anything against me, we'll settle it right here." That he, defendant, then replied, "I haven't got anything against you," and he turned around and as he was starting towards me, Allen Stoneking stepped in between Bob and him, and took hold of Bob, and said something but he, defendant could not tell what Allen said, but Bob said, "Here's a God damned good place to tell it," and Allen said to Bob, "Go away and leave him alone and don't bother him." Bob pushed Allen aside, and after applying a vulgar epithet to defendant he, Bob, made

a move towards defendant, when he reached down in his pocket and pulled out this gun, and said, "Yes, I have got a gun and I want you to leave me alone; I don't want to have no trouble with you anyway, and leave me alone," and he made right at me like he was going to hit me—had his hand doubled up, and he hit at me, and I kind of glanced and throwed my arms up and he hit me on my arm, and the next time he reached right over at me and had his hand pretty near on me and says, "Give me that gun, you damned bastardly son-of-a-bitch, and I will fix you." That he thought he was aiming to strike him with something, and had to shoot him, had to defend himself; he thought he was going to kill him. That he didn't want to kill him, and shot him to keep him from killing him, defendant. He shot three times because he said he was rattled so bad he didn't know.

Such other facts will be stated in the course of the opinion as may seem to be necessary.

At the instance of the State the court, over the objection of defendant, instructed the jury as follows:

"2. If the jury believe from the evidence in the case that the defendant provoked the difficulty or began the quarrel with the intention of taking advantage of the deceased and of taking his life or of doing him some great bodily harm, then there is no self-defense in the case and the defendant can not justify on the ground of self-defense."

And of its own motion the court, over the objection of defendant, instructed the jury as follows:

"1. The court instructs the jury that by the information in this case the defendant is charged with murder in the first degree by having, on the twenty-first day of December, 1901, willfully, deliberately, premeditatedly, and of his malice aforethought killed one Bob Stoneking by shooting him with a pistol.

"The information in this case is a mere formal

accusation against the defendant. It is no evidence of his guilt and no juror should permit himself to be influenced against the defendant because or on account of said information.

"2. The court instructs the jury that if they find from the evidence in the cause beyond a reasonable doubt that on the twenty-first day of December, 1901, at the county of Monroe, in the State of Missouri, the defendant did then and there, with a loaded pistol, willfully, deliberately, premeditatedly, and of his malice aforethought shoot and kill Bob Stoneking, they will find the defendant guilty of murder in the first degree.

"3. The court instructs the jury that, as used in these instructions, the term 'willfully' means intentionally, that is, not accidentally. 'Deliberately' means in a cool state of the blood. It does not mean brooded over or reflected upon for a week or a day or an hour; but it means a conscious purpose to kill, formed in a cool state of the blood, and not under a violent passion suddenly aroused by some real or supposed grievance. 'Premeditatedly' means thought of beforehand for any length of time however short. 'Malice' in its legal sense does not mean mere spite or ill will, as ordinarily understood; but means the intentional doing of a wrong act; that condition of mind which prompts one person to take the life of another without just cause or justification, and it signifies a state of disposition which shows a heart regardless of social duty and fatally bent on mischief. By 'malice aforethought' is meant that the act of killing which this condition of mind prompts one to commit must have been premeditated.

"4. The court instructs the jury that, in the absence of qualifying facts and circumstances, a person is presumed to intend the natural, ordinary and probable results of his acts, and if you believe from the evidence in the cause that on the twenty-first day of December, 1901, at Monroe county, Missouri, defendant, with a loaded pistol, then and there intentionally shot

Bob Stoneking in a vital part of his, the said Bob Stoneking's body, and that the said loaded pistol, if any, was then and there a deadly weapon, you will find that defendant intended to kill said Stoneking, unless the facts and circumstances given in evidence show to the contrary.

"5. The court instructs the jury that, if they find and believe from the evidence in the cause, that on the twenty-first day of December, 1901, at Monroe county, in the State of Missouri, the defendant then and there with a loaded pistol willfully, premeditatedly, and of his malice aforethought, but without deliberation, shot and killed Bob Stoneking, they should find the defendant guilty of murder in the second degree.

"6. The court instructs the jury that if they find and believe from the evidence in the case that on the twenty-first day of December, 1901, at the county of Monroe, in the State of Missouri, the defendant with a loaded pistol then and there while he was in a violent passion suddenly aroused, if so the jury find, by insulting or abusive language then and there spoken to him by Bob Stoneking, then said killing was not done with deliberation; but although the jury may find that defendant fired the fatal shot while in a violent passion suddenly aroused by insulting or abusive words spoken to him by the deceased, yet if said killing, if any, was by defendant done willfully, premeditatedly, and of his malice aforethought, as explained in these instructions, the defendant is guilty of murder in the second degree.

"7. The court instructs the jury that if they find from the evidence in the cause that on the twenty-first day of December, 1901, at the county of Monroe, in the State of Missouri, in the difficulty between defendant and Bob Stoneking in which said Stoneking was killed, if so the jury find, the said Stoneking was the aggressor and struck defendant or approached defendant in a threatening manner, and while within striking

distance of defendant raised his hand or arm as though about to strike defendant and that such conduct, if any, on the part of said Stoneking, provoked in defendant a sudden violent passion and that in said heat of passion, if any, the defendant then and there with a loaded pistol shot and killed Stoneking, but not under such circumstances as to justify the defendant on the ground of self-defense as defined in other instructions, then you will find the defendant guilty of manslaughter in the fourth degree.

"7a. If the jury do not find that defendant brought on or entered into the difficulty between him and Bob Stoneking, in which the latter was killed, if so the jury find, on the part of defendant of taking advantage of said Stoneking, and of killing or inflicting great bodily harm upon Bob Stoneking, and find from the evidence that at the time defendant fired the fatal shot, if so the jury find, the defendant has reasonable cause to apprehend on the part of said Stoneking, a design to do defendant some great personal injury, and that there was reasonable cause for defendant to apprehend some great personal danger, and that there was reasonable cause for defendant to apprehend some immediate danger of such design being accomplished, and to avert such apprehended danger, if any, the defendant shot and killed said Bob Stoneking, and that at the time he fired the fatal shot defendant had reasonable cause to believe, and did believe, it necessary for him to shoot said Stoneking in order to protect himself from such apprehended danger, then and in that case the shooting was justifiable and you will acquit the defendant. It is not necessary to this defense that the danger should have been actual or real or impending and immediately about to fall. All that is necessary is that defendant had reasonable cause to believe, and did believe, these facts. But before you acquit defendant on the ground of defending himself against the threatened danger, you ought to believe defendant's cause of apprehension

was reasonable. Whether the facts constituting such reasonable cause of apprehension have been established by the evidence in the cause you are to determine, and unless the facts constituting such reasonable cause have been established by the evidence in the cause, you can not acquit the defendant on the ground of self-defense even though you may believe he really thought he was in danger.

"8. If the jury do not find that defendant brought on or entered into the difficulty between him and Bob Stoneking in which the latter was killed, if so the jury find, with the intention on the part of defendant of taking advantage of said Stoneking and of killing or inflicting great bodily harm upon said Stoneking, and find from the evidence that at the time defendant fired the fatal shot, if so the jury find, the defendant had reasonable cause to apprehend on the part of said Stoneking design to do defendant some great personal injury, and that there was reasonable cause for defendant to apprehend immediate danger of such design being accomplished, and to avert such apprehended danger, if any, the defendant shot and killed said Stoneking, and that at the time he fired the fatal shot defendant had reasonable cause to believe, and did believe, it necessary for him to shoot said Stoneking in order to protect himself, then and in that case the shooting was justifiable and you will acquit the defendant. It is not necessary to this defense that the danger should have been actual or real or impending and immediately about to fall. All that is necessary is that defendant had reasonable cause to believe and did believe these facts. But before you acquit defendant upon the ground of defending himself against threatened danger you ought to believe defendant's cause of apprehension was reasonable. Whether the facts constituting such reasonable cause of apprehension have been established by the evidence you are to determine, and unless the facts constituting such reasonable cause have been established

by the evidence in the cause you can not acquit the defendant on the ground of self-defense even though you may believe he really thought he was in danger.

"9.    The court instructs the jury that they should take into consideration the threats, if any, made by deceased against the defendant.  If you believe that any of such threats were communicated to defendant prior to the killing, then such threat or threats, if any, so communicated may be considered by you as explaining the conduct and apprehensions of defendant, if any, at the time of the shooting.  You may also consider any threats you may believe were made by Bob Stoneking and not communicated to the defendant prior to the killing, for the purpose of explaining the conduct and demeanor of deceased at the time of the shooting.  If the jury believe from the evidence that prior to the shooting said Stoneking had made threats against defendant, yet this fact alone did not justify or excuse defendant for shooting deceased, if he did shoot him, and although such threats were communicated to defendant before he shot said Stoneking, yet if at the time of the fatal shot, if any, the said Stoneking made no threats against defendant, and made no assault upon defendant, and was making no effort or attempt to carry out such threats, if any, then the same did not justify defendant in shooting deceased, if he did shoot him.

"10.    The court instructs the jury that the law presumes the defendant to be innocent until his guilt is established from the evidence beyond a reasonable doubt. If, therefore, you have a reasonable doubt of the defendant's guilt you should acquit him, but a doubt to authorize an acquittal on that ground ought to be a substantial doubt touching the defendant's guilt, and not a mere possibility of his innocence.

"11.    The defendant is a competent witness in his own behalf, and his testimony is to be weighed by the same rules that govern the testimony of other witnesses, but in weighing his testimony the jury may take into

consideration the fact that he is the defendant in the case, and his interest in the result of the trial.

"12. The jury are the sole judges of the credibility of the witnesses and of the weight to be given to their testimony, and you should take into consideration the character of the witnesses, their conduct and appearance on the stand, their interest, if any, in the result of the suit, the motives actuating them in testifying, the witness's relation to, or feeling for or against the defendant or the deceased, the probability or improbability of the witness's statements, the opportunity the witness had to observe or be informed as to matters respecting which such witness gives testimony, and the inclination of the witness to speak truthfully or otherwise as to matters within the knowledge of such witness, together with all the other facts and circumstances given in evidence. If upon a consideration of all the evidence you conclude that any witness has willfully sworn falsely as to any material fact involved in the trial, you may reject or treat as untrue the whole or any part of such witness's testimony. By 'material fact' is meant any fact which tends to prove or disprove the defendant's guilt or innocence.

"13. Unless the jury under the evidence and instructions in the case find the defendant guilty of murder or manslaughter in the fourth degree, or if they acquit the defendant upon the ground of self-defense they should return a verdict of not guilty. If the jury find the defendant guilty of murder in the first degree, you will simply so state in your verdict, and not assess any punishment. If you find the defendant guilty of murder in the second degree, you will so state in your verdict and assess his punishment at imprisonment in the penitentiary for any term not less than ten years. If you find the defendant guilty of manslaughter in the fourth degree, you will so state in your verdict and assess his punishment at imprisonment in the penitentiary for two years, or by imprisonment in the county

jail not less than six months, or by a fine not less than five hundred dollars ($500), or by both a fine not less than one hundred dollars and imprisonment in the county jail not less than three months.''

Defendant prayed the court to instruct the jury as follows:

''1.   The court instructs the jury that the indictment against the defendant is merely a formal charge, and is no evidence of the guilt of the defendant, and the law presumes the defendant innocent of the charge preferred in the indictment, and this presumption attends him throughout the whole trial, until his guilt is proven beyond a reasonable doubt.

''2.   The defendant is presumed to be innocent and this presumption attends him throughout the progress of the whole trial until it has been overcome by evidence proving his guilt beyond a reasonable doubt.   In a criminal case, it is not sufficient to convict the defendant upon a mere preponderance of the testimony, but, before the jury should convict, the guilt of the defendant must be clear and convincing so that the jury feel convinced to a moral certainty that defendant is guilty as charged.

''3.   The jury are instructed that the law gives the defendant the right to testify in his own behalf, and while the jury may, in determining the weight to be given to his testimony, take into consideration the fact that he is the defendant and the interest he has in the case, still the jury are not for this reason justified in disregarding his testimony if they believe from all the facts and circumstances in evidence, including this fact, that he is telling the truth; the weight to be given his testimony is to be determined by the same principles as any other witness.

''4.   The jury are instructed that they are the sole judges of the credibility of the witnesses and of the weight and value of their testimony.   In determining such weight, credit and value, you will take into con-

sideration the character of the witness, his bias or prejudice in the case, his manner on the stand and of testifying, his interest, if any, in the result of the case, his relation to or feeling for the defendant or deceased, the probability of his statements, as well as all other facts and circumstances detailed in evidence. And in this connection if you believe that any witness has willfully sworn falsely to any material facts in issue in the case, you are at liberty to disregard all or any part of such witness's testimony.

"5. The court instructs the jury that although you may believe the defendant shot and killed the deceased, yet if you should further believe from the evidence and find that at the time of such shooting and killing the defendant had, in consequence of the acts and statements of the deceased, and the attitudes and surroundings of the parties, reasonable cause to believe and did apprehend that he, deceased, was about to do him, defendant, some great bodily harm, or take his life, and that the defendant did such shooting and killing to save himself from the infliction of such injury or from the taking of his life, you will find the defendant not guilty, because under such circumstances the killing being done and for such purpose is justifiable in law, because it was a killing done in self-defense. You will be careful and observe that the danger the defendant apprehended need not be a real or an actual danger, nor need it be a danger in fact impending or about to fall on him; it is sufficient, to warrant an acquittal on the ground of self-defense, if you shall believe that the defendant actually apprehended such danger, that such apprehension was a reasonable one of his part, and that he in good faith under such apprehension shot and killed to protect himself; and in this connection the court further instructs you that the defendant can not be deprived of his right of acquittal on the ground of self-defense because it may be shown that he was in fact exposed to no danger whatever at the hands of deceased;

and in determining as to the apprehensions of the defendant at the time of the shooting, and the reasonableness of such apprehensions, you should take into account all transactions between the defendant and the deceased on the day of the killing, including threats, if any, made by deceased, and communicated to defendant, together with all the facts and circumstances or statements of others connected with such transactions, and you should give such transactions, acts and threats and statements, if any, in connection with all the other evidence before you for the purposes herein mentioned, such weight as you may deem proper; and that the law does not require defendant to gauge or nicely measure the proper quantity of force necessary to repel the assault of the deceased, if any, but he may use whatever force is reasonably necessary to free himself of the impending peril he is placed in.

"6. Although you may believe that the defendant shot and killed the deceased, yet if you should further believe and find that at the time of said shooting and killing the defendant had, in consequence of the acts, attitudes and surroundings of the parties, reasonable cause to apprehend and did apprehend that the deceased was about to do him, the defendant, some great bodily harm or to take his life, and that the defendant did such shooting and killing to save himself from the infliction of such injury or from the taking of his life, you will find the defendant not guilty, because the killing done under such circumstances and for such purpose is justifiable in law, because it was killing done in self-defense. You will be careful to observe that the danger the defendant apprehended need not be a real or actual danger, nor need it be a danger in fact impending or about to fall on him; it is sufficient to warrant an acquittal on the ground of self-defense if you shall believe that the defendant actually apprehended such danger, that such apprehension was a reasonable one on his part, and that he in good faith under such apprehension

shot and killed to protect himself; and in this connection the court instructs you that the defendant can not be deprived of his right of acquittal on the ground of self-defense because it may be shown that he was in fact exposed to no danger whatever at the hands of the deceased.

"7. The court instructs the jury that the character of the deceased is a proper matter for your consideration and you should give it such weight as you deem proper in determining whether or not he, by his acts, at the time of the killing gave the defendant, taken in connection with any other facts, if any, proven, reasonable cause to apprehend such danger as to justify his act of shooting deceased on the ground of self-defense.

"8. The jury are instructed that if, after they have taken carefully into account and considered all the evidence in the case, there remains in the minds of the jury a reasonable doubt of the guilt of the defendant, the law in its humanity gives him the benefit of the doubt, and they should acquit, but to authorize an acquittal on the ground of doubt alone, such doubt should be reasonable and substantial, and not a mere guess or conjecture of his probable innocence.

"9. The court instructs the jury that in determining what weight, if any, should be given to the testimony of witnesses detailing statements made to them by others in casual conversation, the jury should take into consideration the liability of witnesses to misunderstand or forget what was really said in such conversation, and consider such statements with great care and caution and should give them such weight as they may appear to be entitled to in view of all the other facts and circumstances in the case.

"10. You are instructed that you will take into consideration the evidence as to threats, if any, made by the deceased prior to the killing, and if you believe that any of such threats were communicated to the defendant, then such threat or threats may be considered

by you as explaining the conduct and apprehensions, if any, of the defendant at the time of the shooting, and you are further instructed that it is immaterial whether such threats were in fact made by deceased if the same were communicated to the defendant and that the defendant believed they were true. You will also consider any threats you may believe were made by deceased and not communicated to the defendant for the purpose of explaining the conduct and demeanor of deceased at the time of the shooting.

"11. The court instructs the jury that if they believe from the evidence that the deceased, Robert Stoneking, had shortly before the killing threatened to take the life of defendant or do him great bodily harm, and that such threats were communicated to the defendant and caused the defendant to believe and fear that an attack would be made upon him with intent to take his life or do him some great bodily harm, then such threats would justify the defendant in arming himself with a pistol and acting more promptly with said pistol and upon less demonstration of hostility than if such fears had not been so aroused; and if, from the nature of the threats and the character of him who made them, together with his appearance, conduct and action at the time of the shooting, you find and believe from the evidence that defendant had reasonable cause to apprehend and did apprehend that such threats were about to be accomplished and that the deceased was about to kill the defendant or to do him some great bodily harm, then the defendant was justified in killing the deceased and your verdict must be not guilty, although the object of deceased so threatening him was only to frighten him and there was no real danger, unless you find from the evidence that the defendant provoked the difficulty or began the quarrel with the intention of taking advantage of deceased and taking his life or doing some great bodily harm.

"12. The court instructs the jury that if you be-

lieve from the evidence that at the time of the killing
the defendant, Howard Sharp, had reasonable cause to
apprehend and did apprehend a design on the part of
the deceased, Robert Stoneking, to do him some great
bodily harm or to take his life and that the defendant
had reasonable cause to apprehend and did apprehend
immediate danger of such design being accomplished,
and that he shot and killed deceased in order to prevent
the accomplishment of such design, then you will find
the defendant not guilty on the ground of self-defense;
unless you further find from the evidence that the de-
fendant provoked the difficulty or began the quarrel
with the intention of taking advantage of the deceased
and taking his life or doing him some great bodily harm.
And you are further instructed that it is not necessary
in order to find the defendant not guilty on the ground
of self-defense, that the apprehended danger should
have been real or actual or about to fall upon him.  It
is sufficient if, from all the appearances at the time,
the defendant had reasonable cause to apprehend and
did apprehend a design upon the part of the deceased
to do him some great bodily harm or to take his life,
and that he shot and killed the deceased in order to pre-
vent the accomplishment of such design.''

But the court refused to give to the jury, of said in-
structions asked by defendant, instructions numbered—.

To which action of the court in refusing to give
said instructions defendant then and there at the time
excepted and still excepts.

All of the instructions asked by defendant were
given except those numbered five and six, and to their
refusal no exception was taken or saved.

The first assignment of error is with respect to the
action of the court in permitting Mrs. Margaret Dooley,
a witness for the State, in rebuttal, to make the follow-
ing answer to the following question asked her by the
State over the objection of defendant:

''I will ask you whether Everett (meaning Everett

Dooley, a witness for the State) stated to you on his return from the river that night, after the killing, that when he got within twenty or thirty yards of the north bank of the river and after he had heard shooting, he saw two men going down the river towards a sled, whom he did not know at the time, but whom he afterwards learned was the defendant, Howard Sharp?" Answer: "Yes, sir; he told me he saw them."

Mrs. Dooley was the wife of Henry Dooley, grandfather of the State's witness, Everett Dooley. When on the stand at the trial Everett Dooley made the statement embodied in the above question and the further statement in substance that he, at the time, heard one of them say to the other, "Come on, John, I told you I would kill him." On cross-examination, when confronted by a deposition he had given in this case, he admitted that he had not said anything in said deposition about seeing the two men or hearing any such words spoken by anybody.

It is argued by defendant that these facts show that witness Everett Dooley was fairly impeached. "So that the sole purpose of Mrs. Dooley's testimony was to brace him up, by proving by her that on the night of the killing he had made to her the statement that he had sworn to on the stand, although he had not made it in his deposition, and although it is a substantial contradiction of the statements made in his deposition, and although after admitting his signature to the deposition and that he had read it over before he signed it, he yet denied the making of the several answers in his deposition that were inconsistent with his testimony on the stand as to seeing said persons and hearing said remark." That by permitting his testimony as to seeing the men to be thus braced up, the jury might very well, and no doubt did, conclude that if the witness had seen the men, he had heard the remark, "Come on John, I told you I would kill him." "That the testimony of the witness thus impeached, and thus sought to be sup-

ported, bore directly upon the one vital point in issue. It was the theory and contention of the State that defendant went to the place where deceased was, knowing that he was there, and with the intention of bringing on a difficulty with him and killing him; and it follows that if his testimony as to seeing defendant and hearing him use the words at the time and place testified to on the stand, was to be taken as true, defendant's plea of self-defense was overthrown. But his testimony on that point stood fairly and clearly impeached when Mrs. Dooley took the stand, and was utterly unworthy of belief. The effect of her testimony was to impair and break the force in the minds of the jury, of a just impeachment, and to secure a verdict of guilty."

As a general rule evidence of prior statements made by a witness can not be introduced in evidence to support or corroborate his testimony; to this general rule, however, there are important exceptions. One of these exceptions is that where a witness upon his cross-examination by his testimony to the contrary on the trial of a criminal case has been discredited, he may be sustained by showing that he made to another person, soon after the commission of the offense, a statement in harmony with that made by him on the trial, though the particulars of the statement are inadmissible. [Wharton's Crim. Evidence (9 Ed.), sec. 492.]

In this case Mrs. Dooley testified that the statement in question was made to her by Everett Dooley on the night of the homicide, when he had just come from the place where the homicide occurred, and at a time when he could have had no motive in making a false statement about it.

But, even under such circumstances, whether evidence can be introduced of former declarations of the witness to corroborate his testimony at the trial, the authorities are in much conflict. The trend of the decisions of this court, however, seems to be that such declarations are permissible.

Thus, in the case of State v. Grant, 79 Mo. 113, it is ruled that if an attack be made upon the character of a witness, it is then permissible to prove that the witness has made statements consistent with those made as a witness. That case was followed in the subsequent case of State v. Whelehon, 102 Mo. 17.

In State v. Taylor, 134 Mo. 109, it is ruled that there is no doubt but that when a witness is impeached by the medium of alleged contradictory statements, evidence may be introduced in rebuttal of statements made by him of a similar character theretofore made in corroboration of statements made by him on the trial. It is true that the same distinguished judge wrote both these cases, and that in the Taylor case, he said the rule was stated too broadly in Grant's case, by which he clearly meant that in Grant's case the rule was held to apply to all cases in which the character of the witness is attacked upon any ground, while it only applies in case the witness is attacked upon the ground of having made contradictory statements, and it is sought to impeach him upon that ground.

In Hobbs v. State, 133 Ind. 404, it is said: "'If the witness has not been impeached, by proof of his having previously made statements inconsistent with his testimony, there seems to us to be no sufficient reason for the introduction of the corroborating evidence. But it is otherwise, if the witness has been thus impeached; it appears then to be proper to give the party who called the witness an opportunity to support him, by proving that the witness had, on other occasions, stated the facts to be as he represents them in his testimony. There are several cases directly in favor of the admission, under these circumstances, of this corroborating evidence. [Cooke v. Curtis, 6 Harr. & Johns. 93; Lessee of Packer v. Gonsalus, 1 Serg. & Rawle 536; . . . Lessee of Wright v. Deklyne, 1 Peter's Cir. Ct. 203; The People v. Vane, 12 Wend. 78.]' We may add to the citations of Mr. Justice BLACKFORD the more recent

cases of Dailey v. State ex rel., 28 Ind. 285; Brookbank v. State ex rel., 55 Ind. 169; Hodges v. Bales, 102 Ind. 494; Dodd v. More, 92 Ind. 397; Carter v. Carter, 79 Ind. 466. The appellants further contend that if corroborative statements may be proven under such circumstances, the impeached witness should not be permitted to testify to such statements. We know of no statute or rule declaring such witness incompetent, and, under the practice prevailing, the trial court or jury being the judges of the credibility of the witnesses, and being enabled to weigh his testimony in the light of his impeachment, we can see no good reason for excluding him as a witness.''

Now the facts with respect to this question, as disclosed by the record and as conceded by defendant, show beyond any question that the object of defendant in introducing the deposition of the witness was for the purpose of impeaching him by showing that his testimony upon the trial was inconsistent and in conflict with what he stated in the deposition with respect to the same matter, by reason of which defendant insists that he stood ''fairly and squarely impeached.'' It thus clearly appears that the facts disclosed by the record bring this case within the exception to the general rule, and that the court did not err in admitting in evidence the testimony of Mrs. Dooley.

Nor was there reversible error in permitting the endorsement on the deposition of the witness, Everett Dooley, purporting to be a certificate of Judge Moss, that the prosecuting attorney declined to cross-examine the witness at the time the deposition was taken. While it had nothing to do with the case and should not have been admitted in evidence, it could in no way have prejudiced the right of defendant, and the judgment should not be reversed upon that ground.

A further contention is that the court should have sustained defendant's motion for a new trial because

there was no unimpeached and credible testimony tending to show the essential elements of murder in any degree. The argument is that aside from the testimony of witnesses Everett Dooley and Charley James, there was no evidence tending to show that defendant knew that Bob Stoneking was in the skating party when he went to where they were. As the weight of the evidence and the question as to whether or not these witnesses were successfully impeached, were questions for the consideration of the jury, this court will not usurp their province by undertaking to pass upon them. Nor will this court undertake to say who was the aggressor or whether defendant had good reason to believe that deceased intended to kill him, or inflict upon him bodily harm, and he did so believe, for the same reason.

Defendant challenges the correctness of instruction 7a and instruction 8, given by the court of its own motion, upon the ground that, in each of them, he directs the jury that, "if the jury do not find that defendant brought on or entered into the difficulty," etc., and then goes on and undertakes to state the law of self-defense applicable to the case. It is said that these instructions do not state the law correctly, and that the jury should have been told that they must find that the defendant brought on the difficulty or (voluntarily) entered into it. While these instructions are inartistically drawn and taken by themselves might be considered as misleading, yet when read in connection, as they should be, with instruction 12 given upon the part of the defendant which is in accordance with the well-settled law of this State as announced in State v. Starr, 38 Mo. 270, and State v. Partlow, 90 Mo. 608, whatever of a misleading character there may be in said instructions, is explained away by defendant's said instruction 12. The most that can be said against said instructions 7a and 8 is that they negatively toll the right of self-defense, if the defendant provoked the difficulty, or began the quarrel with the intention of

taking advantage of his adversary and taking his life or doing him some great bodily harm, i. e., that they present that feature of the case negatively to the jury, instead of affirmatively.    The instructions are not in conflict and when read together are not obnoxious to the objection urged against them. .

A further contention is that instruction 2, given at the request of the State, is erroneous and should not have been given, for the reason that it was unwarranted by the evidence in the case, and the law.    But we think there was ample evidence upon which to predicate it, and if defendant had desired an instruction upon the theory that he undertook to honestly withdraw from and abandon the conflict, and that deceased followed up, he should have asked an instruction upon that feature of the case, or called the court's attention at the time to its failure to instruct upon it.    [State v. Cantlin, 118 Mo. 100; State v. Vinso, 171 Mo. 576.]

Defendant also complains of the action of the court in refusing to give instructions 5 and 6 asked by him. But there was no exception taken and saved at the time to the action of the court in refusing them, and that matter cannot be considered upon this appeal.

It is said for defendant that error was committed by the court in giving instruction 7 of its own motion, in that it limits the defendant's ground of self-defense to the circumstances as conditioned in other instructions.    This instruction is a very clear exposition of the law with respect to manslaughter in the fourth degree under the facts and circumstances disclosed by the record, and is not obnoxious to the objection urged against it.

The court instructed for murder in the first and second degrees, manslaughter in the fourth degree, and self-defense.    No instruction upon any other degree of the offense was authorized by the evidence.

The judgment is affirmed.    All concur.