10601

STATE v. ENGLISH

(*106 S..E. 781*)

1. CRIMINAL LAW—EXCEPTION TO ARGUMENT OF SOLICITOR HELD NOT TO AVAIL DEFENDANT.—In a prosecution for murder resulting in a conviction of manslaughter, defendant's exceptions based on the solicitor's argument to the jury that a report in the community, started by defendant, that deceased had been in defendant's watermelon patch at some time prior to the immediate difficulty, operated to deprive defendant of the right of self-defense, held not availing to defendant, because assuming the fact that the accusation of deceased by defendant was without intention or expectation of provoking a difficulty; such issue was to be determined by the jury, and not by the Court.

2. HOMICIDE—INSTRUCTION GIVING EXAMPLE OF MANSLAUGHTER NOT MISLEADING.—In a prosecution for murder resulting in a conviction of manslaughter, instruction giving the jury as an example of manslaughter a killing under provocation of an assault, *held* not erroneous, there being no reasonable supposition that the allegations in any manner misled the jury.

3. HOMICIDE—INSTRUCTION THAT SELF-DEFENSE NOT AVAILABLE TO PERSON WHO PROVOKES DIFFICULTY BY OPPROBRIOUS LANGUAGE NOT ERRONEOUS.—In a prosecution for murder resulting in a conviction of

manslaughter, instruction that the true rule is that self-defense is not available to a person who uses language so opprobrious as to be calculated to bring on a difficulty, and which does actually contribute to the bringing on of a physical encounter, etc., *held* not erroneous.

Before SEASE, J., Fairfield, September term, 1919. Appeal dismissed.

Will English indicted for the murder of Roland Shelton and upon convicition for manslaughter appeals.

The appellant's exceptions were as follows:

1  That his Honor erred in permitting the solicitor, over the twice-repeated objections of defendant's counsel, to argue to the jury that the defendant had started a report in the community that the deceased had been in defendant's watermelon patch; that, by starting such a report, he was at fault in bringing on the difficulty, and could not claim the protection of the law of self-defense—the error being: (a) That such a statement by defendant, made some time prior to the immediate difficulty, without any intention or expectation of provoking a difficulty, could not operate to deprive him of the right of self-defense, and such argument was therefore improper, and highly prejudicial to the defendant; (b) that under such a construction of the law, and ruling by his Honor upon defendant's objection to such argument, the jury would have been compelled to find the defendant guilty, even though they believed that he had established a clear case of self-defense in so far as the immediate difficulty was concerned.

(2)  That his Honor erred in charging the jury as follows: "Now, to give you an example of what manslaughter is, it might be well to give you an example of what murder is, contrasting the two.  If a person assaults you, not necessarily battery, if he strikes at you within striking distance, or whether he is within striking distance or not, and you then and there, by reason of the sudden heat

and passion, resist the assault, strike, and kill him, that would be manslaughter"—the error being that such charge tended to lead the jury to believe that one has no right to resist, under any circumstances, an unprovoked assault upon himself.

(3) That his Honor erred in charging the jury as follows: "I charge you, gentlemen, that the true rule is that self-defense is not available to a person who uses such language, so opprobrious as is calculated to bring on a difficulty and which does actually contribute to the bringing on of a physical encounter. The general doctrine that mere words will not justify blows is involved in that rule. The true rule is that self-defense is not available to a person who uses language so opprobrious as is calculated to bring on a difficulty, and which really does contribute to a physical encounter"—the error being: (a) That such charge was not warranted by the testimony; (b) that such charge could only have been intended by his Honor to answer the objections urged by defendant's counsel to the argument of the solicitor pointed out in the first exception, there being no other testimony in the case to which such charge was applicable, and that thereby the defendant was deprived of the right of self-defense; (c) that under such a construction of the law, one who has made any remark reflecting upon another, without any intention that such remark should be repeated, would have no right to defend himself against an otherwise unprovoked assault subsequently made upon him.

*Messrs. McDonald & McDonald,* for appellant, cite: *Statement made by accused to deceased was not such as to deprive him of the plea of self-defense:* 13 R. C. L. 833; 55 S. C. 32, 74 Am. St. Rep. 733 and note; 45 L. R. A. 687; 65 S. C. 324; 75 S. C. 494; 25 A. & E. Enc. Law 268; 89 Ga. 140; 92 Ga. 601; 85 S. C. 101; 16 L. R. A. (N. S.) 671.

*J. K. Henry, Solicitor, and Samuel M. Wolfe, Esq., Attorney General,* for the respondent. Oral argument by Mr. Wolfe.

April 11, 1921.

The opinion of the Court was delivered by Mr. CHIEF JUSTICE GARY.

The defendant was tried on an indictment, charging him with the murder of Roland Shelton. He admitted the killing, but pleaded self-defense. The jury found him guilty of manslaughter, and he appealed from the sentence imposed on him. The record contains this statement:

"It appears from the testimony that the deceased, in company with his father, a brother, and two friends, were sitting down near the public road on the plantation of T. W. Traylor, in Fairfield county, and nearby was a well, which was used by the tenants on the plantation. Will English, a tenant on the place, came down to the well with two of his little children and drew them a bucket of water, and then started on down the road in the direction of the farm, which he was cultivating. He was carrying a shotgun, which he stated was for the purpose of shooting crows. His route led him by the party of which the deceased was a member, and when opposite them he exchanged greetings with them. Brice Shelton, a brother of the deceased, then said to English that he had heard that English had accused him of going into his watermelon patch. The defendant denied this, and Brice Shelton told him that if he had not made such an accusation that it was all right. Then Roland Shelton, the deceased, took up the conversation. and there is a conflict in the testimony as to just what passed, but this started the dispute which led up to the killing. The testimony in this connection is set out in the record."

Turning to the testimony we find that Brice Shelton, brother of the deceased, thus testified:

"Ed Stevenson, Bub, Virgil Jones, and Roland and myself were sitting down on a pile of logs in front of our door, and we were laughing and talking. Will English come up with his gun, and I says to him, I hear he had me accused of going into his watermelon patch; he said no, he didn't say it, and I said if he didn't say it, it was all right. My brother, Roland, asked him, 'I hear you got me accused of going in there.' Will, he walks off a few steps, and he turned around and said: 'Yes, damn you, I said it and I stick to what I said.' Then Will and Bub started toward one another."

The record also contains this statement:

"During the course of the solicitor's argument to the jury he argued that the defendant had circulated the report in that community that deceased had been in defendant's watermelon patch, and therefore the defendant was at fault in bringing on the difficulty. Defendant's counsel, in the midst of the solicitor's argument, objected to such argument, upon the ground that this provocation was too remote, that the defendant was not thereby deprived of the right of self-defense and after listening to arguments by counsel on both sides, the presiding Judge overruled the defendant's objection. The solicitor then argued to the jury that the defendant had circulated a report in the community that the deceased had been in his watermelon patch, and that when the deceased had asked him about it, he at first denied it, and had then repeated the accusation to his face with curses. The argument was that one who charged another with being a thief, and repeated it to his face in the manner described in the testimony, could not claim to be without fault. Defendant's counsel also objected to this argument, but their objection was also overruled."

The defendant appealed upon exceptions which will be reported. Neither subdivision (a) nor (b) of the first exception can be sustained, as the appellant assumes the fact that the accusation of the deceased by the

defendant was without any intention or expectation of provoking a difficulty. Such issue was to be determined by the jury, and not by the Court.

The second exception must be overruled, as it cannot be reasonably supposed that the illustration in any manner whatsoever misled the jury.

The third exception cannot be sustained, as the charge of his Honor, the presiding Judge, is sustained by the cases of *State v. Rowell,* 75 S. C. 494, 56 S. E. 23, and *State v. Lee,* 85 S. C. 101, 67 S. E. 141, 137 Am. St. Rep. 869, and was applicable to the facts of this case.

Appeal dismissed.

JUSTICES WATTS and FRASER concur.

MR. JUSTICE COTHRAN, (dissenting:) I think that there was serious prejudicial error in the rulings and charge of the Circuit Judge in this case, and that there should be a new trial.

The circumstances of the homicide, from the State's point of view, were as follows:

The defendant, English, and the deceased, Shelton, were tenants upon the same tract of land, having separate farms, the deceased, a young man, working with his father; some one had invaded the defendant's watermelon patch, and he had told others that Shelton was the marauder; on the day of the homicide the deceased, with his father, brother, and two friends, were sitting upon a pile of logs near the public road, talking; near the road also was a well which was customarily used by the tenants; English came down the road with his children to the well, and drew water for them; he was carrying a shotgun upon his shoulder; after he had drawn the water he went over to where the party were

sitting on the logs, and addressed them pleasantly, remarking on the weather; the brother of the deceased asked English if he had accused him of the depredation referred to; he denied it, and the brother expressed his satisfaction with the denial; the deceased then made the same inquiry as to himself; English at first denied that also, but later admitted the accusation, and repeated it; hot words passed between them, and they started towards each other; Shelton made some. kind of a motion with his hand in front of English's face, laughing towards the others who were still seated upon the log; English struck at Shelton with the butt of his gun; Shelton dodged the blow and threw a rock at English, striking him on the head; English reversed his gun, put the butt up to his shoulder, and fired, while Shelton had turned.

The defendant pleaded self-defense.

It appears that the Solicitor, in his argument to the jury, contended that as the defendant had upon another occasion, or other occasions, circulated a report that the deceased had been in his watermelon patch, he was not on that account free from fault in bringing about the difficulty which terminated fatally, and was not, therefore, entitled to rely upon his plea of self-defense in the circumstances immediately attending the homicide. The defendant's counsel objected to that line of argument on the ground that the provocation was too remote; the Circuit Judge heard argument upon the objection, and in the presence of the jury overruled the objection.

The appellant contends that the overruling of the objection amounted to an approval of the position taken by the Solicitor, and, having been made after argument, in the presence of the jury, had quite the effect of a distinct charge to the jury upon that point. I do not think so, necessarily. The ruling of the Circuit Judge is not given, and possibly the ground taken by him for overruling the objection was

that it involved the decision by him of a question of fact; "that the provocation was too remote," which would have been correct. If the objection had been based upon the entire absence of any evidence to connect the circulation of the report in an intentional way on the part of the defendant with the actual altercation, I think the objection would have been timely.

In my opinion, there was not a particle of testimony tending to show, either before the altercation or at the time of its occurrence, that the watermelon episode had any such causative force in precipitaing the difficulty as would debar the defendant of his plea of self-defense; and that the injection of the principle of "provoking the difficulty" into the case was entirely irrelevant, and seriously prejudiced the rights of the defendant. That it was causative in a sense, there can be little doubt; it was what made the young man mad, what made him begin the difficulty with the defendant, after the latter had turned to leave the gathering which he had approached in perfect good humor; but there is absolutely nothing to show that the defendant said or did anything prior thereto, or at the time, that was intended, or even calculated, to provoke the deceased to attack him.

Reviewing his conduct prior to the day of the encounter, all that we find is that his property had been stolen and that he laid the theft upon the deceased by circulating a report to that effect. Surely a man whose property has been stolen has the right to express his suspicion, or his conviction, as to the identity of the thief, without being charged with the intention of provoking the thief to attack him, and thus, under a deceptive plea of self-defense, afford him an opportunity of killing him. If the suspicions be well grounded, he certainly has the right to express them; if they be groundless, the sneak is not expecting, certainly not intending, an attack.

In the immediate circumstances of the altercation, the

defendant is not shown to have been in any way the aggressor; the deceased was angered by the report, and called upon the defendant for a repudiation of it. If the defendant had made the accusation, and believed it to be true, he was not called upon, in order to avoid an imminent attack by Shelton, to deny or recant his accusations; and I do not think that under such circumstances his refusal to deny, and his reaffirmation of the charge, is any evidence of such provocation of the difficulty as should rob him of his right to defend himself from a murderous attack.

I think that the Rowell case, 75 S. C. 494, 56 S. E. 23, has been given a much wider application than it warrants, though perhaps justified by the apparently unlimited declaration of the law contained in that decision. As that decision has been construed and applied, there is little difference between it and the charge of the Circuit Judge which it reversed.

I do not subscribe to the law that any opprobrious epithet calculated to provoke a personal encounter. regardless of the intention of the party applying it, will rob him of the right to defend himself against a murderous attack. The circulation of the most outrageous, mendacious and slanderous reports against another will not justify such other in murderously assaulting the slanderer in resentment. Such an assault, resulting fatally, would constitute murder. Against it the slanderer would be permitted to defend himself, to the extent of slaying, if necessary, even though it should appear that the slanderer was the provocation of the attack. It would be illogical in the extreme to hold that one could not defend himself against an attack which, resulting in his own death, would constitute murder in his assailant.

Even where the insult is applied in the immediate circumstances of the affray, a similar glaring inconsistency appears, which, to my mind, demands a restricted applica-

tion of the doctrine of "provoking the difficulty" as declared in the Rowell case. "No Words, however opprobrious, will justify an assault," is a doctrine as to which there can be no dispute. If, therefore, the insulted party should resent the insult by slaying the other, it would be murder in him. His attack would be a murderous attack; and to hold that by the simple application of an opprobrious epithet, reasonably calculated to provoke a personal encounter, the party cannot defend himself against an attack which, resulting in his own death, would be murder in the assailant, strikes me as illogical to a degree.

A modified, and perfectly reasonable and consistent statement of the principle, in my opinion, is this:

"If it is an assault, or the menace of one by an overt act, or the provocation of a difficulty with intent to inflict death or great bodily harm in the event it is resisted, made of malice, to bring about that result and enable the provoking party to wreak his vengeance on the assailant, that is an 'aggression' or 'fault,' and a 'provoking of the difficulty,' within the legal sense and meaning of the terms. If the 'combat is provoked,' or 'the occasion to kill is produced,' * * * on this account, with this intent, and for this purpose, the defendant cannot rely upon the plea of self-defense." *Foutch v. State,* 95 Tenn. 711, 34 S. W. 423, 45 L. R. A. 687.

This is exactly in line with the charge of Judge Watts (now Associate Justice) in the case of *State v. Cobb,* 65, S. C. 324, 43 S. E. 654, 95 Am. St. Rep. 801.

"If a man makes preparation * * * that way to go and raise a row with the other, with the intention of killing the other if the other resents the insult or strikes him, and he kills him, that is murder."

In *State v. Summer,* 55 S. C. 32, 32 S. E. 771, 74 Am. St. Rep. 707, the Circuit Judge had charged the jury:

"The law would say you cannot place your enemy, antagonist, or fellow-being, can't surround him, with such circumstances which you know he would resent, and then mention it to him, bring it up to him to make him fight, just to get to kill him under circumstances which might appear to be sudden and unexpected; the law says that you cannot do that.' * * * If although the fight might be sudden, yet if it appears there was a predetermination on the part of the slayer to bring it about, then if he kills, it is murder and not manslaughter."

.This Court declared "the language of the charge set forth sound, wholesome law."'

In *State v. Gibbs,* 113 S. C. 256, 102 S. E. 333, this Court held that prior difficulties between the parties (without reference to who was at fault in those difficulties) did not deprive the defendant of the right of self-defense. The Court must have had in mind difficulties in which the defendant was at fault, for if he was not, the matter was not worthy of consideration and would not have been suggested. If this be true in reference to difficulties in which the defendant was at fault, it is an easy step to the circulation of reports as to which he may have been entirely correct. Certainly a prior difficulty in which the defendant was at fault is more calculated to provoke a second difficulty than the circulation of a report in which he was not at fault is to provoke an initial difficulty.

The beauty, to my mind, of this modified doctrine is its absolute consistency from the standpoint of the result to either party. If the insulting party, under the supposed conditions, should slay the other, he would be guilty of murder; if the insulted party should slay him, he would not be met with the rule that no words will justify an assault, for he would be resisting a murderous assault; he would not be simply resenting an insult by words, but would be defend-

35—S. C. 115

ing himself against an attack which, if consummated fatally, would be murder in the other.

"One who insults another by opprobrious words may be bound to anticipate that the person insulted will resent the insult to the extent the law allows, but he is not bound to anticipate that the latter will go to the extent of attempting to take his life; and if such an attack is made, upon no greater provocation than this, and the person thus assaulted kills his assailant, under a reasonable belief that it is necessary to do so in order to save his own life, it is not murder nor manslaughter. If, however, a person provokes an assault by the use of gross insults and obloquy, with the hope and intent that the words will cause the deceased to make an assault upon him, he cannot plead self-defense in justification of the killing." 24 A. & E. 268.

"And it may be stated generally that any act in violation of law, and reasonably calculated to produce the occasion for a killing, amounts to bringing on the difficulty, and bars the right of the actor to plead self-defense." *Wharton on Hom.* (3d Ed.) § 323.

"The plea of justification in self-defense cannot avail in any case where it appears that the difficulty was sought for and induced by the act of the [defendant] in order to afford him a pretense for wreaking his malice." *State v. Starr* 38 Mo. 270; *State v. Parker,* 96 Mo. 382, 9 S. W. 728.

"To bar a person's right to use a deadly weapon in self-defense, he must have been the originator of the difficulty, must have entered it armed, and must have brought it on intending, if necesary, to use his weapon to overcome his adversary." *Hunt v. State,* 72 Miss. 413, 16 South, 753.

"Where a person provokes an assault upon himself, for the purpose of securing a pretext for killing his assailant, the assault will furnish no excuse for the killing." *State v. Cross,* 68 Iowa, 180 26 N. W. 62.

"Where, on the trial of an indictment for murder, the fact of killing with a deadly weapon was established, a charge to the jury that, if they believed that the defendant sought a quarrel with the deceased in order that he might take advantage of it to kill him, then no danger to himself, thus brought on, would excuse the killing, was held correct." *Murphy v. State,* 37 Ala. 142.

"Although the slayer provoked the combat or produced the occasion, yet, if it was done without any felonious intent, the party may avail himself of the plea of self-defense." *Hash v. Commonwealth,* 88 Va. 172, 13 S. E. 398.

"One who provoked an assault by the use of gross insult and obloquy, with the belief and intention that the words would cause deceased to make the assault, cannot plead self-defense." *Hays v. Territory,* 7 Okl. 15, 54 Pac. 300.

"If he provokes or begins the difficulty with the purpose of taking advantage of the deceased and taking his life, or doing him great bodily harm, then he cannot justify the killing on the ground of self-defense, however imminent the peril became, and the killing is murder in the first degree." *State v. Hopper,* 142 Mo 478. 44 S. W. 272.

"The plea of justification in self-defense cannot avail in any case where it appears that the difficulty was sought for and induced by the act of the [defendant] in order to afford him a pretense for wreaking his malice." *State v. Partlow,* 90 Mo. 608, 4 S. W. 14, 59 Am. Rep. 31.

"Where an assault is brought on a person by his own procurement, or under an appearance of hostility which he himself creates with a view of having his adversary act on it, and he does so act and is killed, the plea of self-def is unavailing." *People v. Glover,* 141 Cal. 233, 74 Pac. 745: *State v. Sharp,* 183 Mo. 715, 82 S. W. 134; *People v. Filippelli,* 173 N. Y. 509, 66 N. E. 402.

"If one provokes a difficulty in order to be ready prepared to kill another, or inflict serious bodily harm upon him, he cannot justify such killing on the ground of self-defense, although it may subsequently be necessary for him to kill his adversary in order to save his own life." *Young v. State,* 53 Tex. Cr. 416, 110 S. W. 445, 126 Am. St. Rep. 792.

To hold that the circulation of a report accusing another of larceny would, without regard to its truth or falsity, constitute a provocation of the difficulty, would result in this: Any person whose property has been stolen would give expression to his suspicions or conviction as to the identity of the thief, at the risk of being called to account for his words, and upon attack therefor, of being deprived of the right to defend himself from a murderous attack. In other words, he who has given expression to such conviction, under the law as thus expounded, subjects himself, without hope of reprieve, to capital punishment at the hands of the thief. The fact that the thief may be executed will be small consolation to him. If the facts would justify the report, the law makes it the duty of the injured party to cry aloud; it provides the machinery to be set in motion by him for the punishment of the thief. Even if the report be false, it should be made to appear that it was circulated for the purpose or with the reasonable expectation of bringing about a difficulty. In such cases the calumny is usually the work of the skulking coyote.

"The right to defend one's self from a public horsewhipping is not defeated by the circulation of slanders about relatives of the assailant." *State v. Bartlett,* 170 Mo. 658, 71 S. W. 148, 59 L. R. A. 756.

"Nor is the right to defend one's self against an attack by another defeated by the circulation of slander about relatives of the assailant, or by the publication and circulation of a libel concerning him." *Wharton,* § 326.

Wharton declares:

"Nor is it necessary that the means used should have been such as were reasonably calculated to provoke a difficulty, if the accused intended to provoke a difficulty, and used such means as he thought would provoke it, and they did provoke it, it is all that is necessary." Section 323.

I may say, too, that the unrestricted application of the doctrine announced in the Rowell case ignores the well recognized distinction between a perfect and an imperfect self-defense. The former appears when all of the well-known elements of self-defense have been established; the latter when the defendant has been at fault in bringing on the difficulty, though not with the intention of creating the opportunity to take the other's life or inflicting serious bodily harm.