THE STATE v. WHELEHON, *Appellant.*

1.  **Evidence:** WITNESS, CONTRADICTORY STATEMENTS OF : CORROBORATION. A party whose witness has been impeached by proof of his contradictory statements can, to corroborate him, give in evidence other declarations of the witness consistent with the evidence given on the trial. (*State v. Grant*, 79 Mo. 133.)

VOL. 102—2

2.  **Witness, Former Testimony of.**  The former testimony of a witness is not admissible in evidence without proof of its correctness.

3.  ———— : ———— : GRAND JURY MINUTES.  The rule applies to minutes of the testimony of witnesses examined before a grand jury.

4.  **Supreme Court Practice:**  IMPROPER EVIDENCE : REVERSIBLE ERROR.  The improper admission of evidence will not be deemed harmless where the evidence on the trial was conflicting, and the case was one in which the improper evidence was liable to influence the jury against the defendant.

*Appeal from Jefferson Circuit Court.*—HON. JOHN L. THOMAS, Judge.

REVERSED AND REMANDED

*Dinning & Byrns* with *W. H. H. Thomas* for appellant.

( 1 )  There is no evidence tending to prove that anything done by the defendant to deceased caused or hastened its death.  No authorities necessary. ( 2 ) The court erred in permitting the state to read the minutes of the evidence taken by the grand jury:  Mrs. Holman, Tod Holman and Mrs. Applegate.  R. S. 1889, sec. 4075; *Smith v. Stickney*, 17 Barb. 489; *People v. Finnegan*, 1 Parker, C. R. 147; *Lamb v. Stewart*, 2 Ohio, 230; *Stahle v. Spohn*, 8 Serg. & Rawle, 317; *Wear v. Wear*, 8 Greenleaf, 42; *Jackson v. Ely*, 5 Cowan, 314; *Munson v. Hastings*, 12 Vt. 346; *Robb v. Hackley*, 23 Wend. 50; *State v. Winkly*, 14 N. H. 480; Roscoe Crim. Ev. [ 6 Amer. Ed.] pt. of Judge SHARSWOOD's note on p. 96; *Russell v. Coffin*, 8 Pick. 143; *Moore v. Rodgers*, 10 Conn. 13. ( 3 )  The court erred in permitting the state to read in evidence the minutes of Mrs. Applegate before grand jury, at some time when she had not testified on this trial of the case as a witness.  *State v. Thomas*, 78 Mo. 327; *State v. Grant*, 79 Mo. 113. ( 4 )  The verdict was against the evidence,

and against the weight of the evidence, and against the law as declared by the court.

*John M. Wood*, Attorney General, for the State.

Conceding the grand jury notes were improperly admitted, it was not reversible error.  *State v. Owen*, 78 Mo. 367.

RAY, C. J.—Defendant and his wife were jointly indicted at the September term, 1886, of the circuit court of Jefferson county for murder in the first degree.   The indictment charged that defendants in said county, on the first day of December, 1885, and on divers other days and times between that day and the first day of April, 1886, made divers assaults in and upon one Della Whelehon, a female child of the age of three years, and at divers times during said dates struck, beat and wounded the said Della Whelehon with sticks and other weapons to the jurors unknown ; and that it was the duty of said defendants to provide for and take care of said Della Whelehon, and, contrary to their duty in that behalf, they put and placed her out of their house, and into an open place and left her exposed to the inclemency of the weather without sufficient clothes, covering, shelter and protection for the body of the said female child, by means of which striking, beating and exposure, she became and was mortally sick, weak and disordered in her body, of which she, on the first day of April, 1886, in said county died.

At the May term, 1887, they were arraigned and plead not guilty, and, upon a trial had at said term, Decenia Whelehon, wife of Garrett P. Whelehon, was found not guilty, and Garrett P. Whelehon was found guilty of manslaughter in the fourth degree, and his punishment assessed at imprisonment in the county jail for three months and a fine of one hundred dollars, the lowest punishment, we believe, which could be imposed for the

offense charged.   Defendant duly appeals from the judgment and sentence against him.

As we gather from the abstracts furnished us by the parties to the cause, the defendant, Garrett Whelehon, discovered that one Sarah Larkins, an unmarried female, living in the neighborhood, was pregnant, and communicated the fact to his wife and codefendant, and also that he was the father of the child, and thereupon it was agreed between him and his wife that, in order to avert suspicion and keep down scandal, they would have the said Sarah come to their house and remain until after the child was born, and that defendant and wife would claim the child as their own.   Sarah Larkins acquiesced in this arrangement, took up her residence with the Whelehons until some ten or twelve days after the birth of the child, which she left with them upon their promise, after its birth, to raise it as one of their own children.   Said Sarah thereafter never assumed any charge or control of the child, but the defendants claimed it as one of their own children.   The child was born either in March, 1883, or in March, 1884; was at first, perhaps, a healthy child, but soon became weakly and sickly, and, after numerous afflictions, died at defendant's house in April, 1886.

We deem it unnecessary to go into the details of the evidence, but think it will suffice, in view of our disposition of the case, to say that some of the evidence in behalf of the state is to the effect that the child was neglected, harshly treated, improperly clothed and exposed.   While some portions of the state's evidence and the evidence in defendant's behalf are to the effect that defendants gave it proper attention and care, medical attention and food and clothing the same as that bestowed on their other children, and such as they could afford and was suitable to their condition in life.

Upon the trial the state was permitted over defendant's objection to read in rebuttal the minutes of the

testimony of Emeline Holman and Tod Holman, and one Mrs. Applegate or Appleberry taken before the grand jury, for the purpose of showing that statements made before the grand jury were consistent with their evidence upon the trial, the defendant having offered evidence of statements by them contradictory to their evidence upon the trial. So far as the last-named witness, Mrs. Applegate, is concerned, if indeed there was any such witness, the transcript shows that the prosecuting attorney offered in rebuttal the minutes of the testimony of Mrs. Applegate (so she is named in the offer) before the grand jury for the above purpose, and that the same was thereupon received. But the clerk says that while the bill of exceptions calls for the testimony of Mrs. Applegate or Appleberry, he has not been able to find the same. The transcript shows that one Mrs. Rebecca Appleberry testified as a witness in the state's behalf, but fails to show that there was any witness in the cause named Applegate. Under the circumstances taken together it seems probable that the name Applegate is a clerical mistake for Appleberry.

But aside from the doubts and objections made and suggested in this behalf, viz., that the minutes of Mrs. Applegate's testimony before the grand jury were inadmissible because she had not testified upon the trial, the minutes of the testimony of the other two witnesses, the Holmans, was, we think, incompetent as offered. Whether a party whose witness has been attacked on cross-examination, can give in evidence former declarations of his witness to corroborate his testimony at the trial, has been, it seems, very much controverted. Roscoe's Cr. Ev., p. 183. It has been ruled in this state that such statements are admissible. *State v. Grant*, 79 Mo. 133, and cases cited. But that is not the precise question now before us. The general rule in all ordinary cases is that the former testimony of a witness must be proved by some person who will swear to its substance at least, from his own memory,

and that notes of the testimony may be received if the party taking them will swear to their accuracy. 1 Greenl. Ev., sec. 166 ; 1 Whart. Ev., sec. 180.

The notes of the evidence taken by the trial judge unsworn to or unproved are not admissible. 1 Whart. Ev., sec. 181 ; 1 Greenl. Ev., sec. 166. They can become admissible only under the sanction of his oath to their completeness and accuracy. In brief, notes of former testimony of a witness are in no case evidence *per se*, or evidence in and of themselves   They must be proved to be at least substantially complete and correct. Nor do we think that section 4075, Revised Statutes, 1889, in any way affects the rule. That section merely authorizes the grand jury to appoint one of their number clerk to preserve the minutes of their proceedings' and of the evidence given before them, which minutes the statute declares shall be given to the attorney prosecuting in the county. This provision is enacted with the view to the convenience and information of prosecuting officers and to enable them to prepare and try the causes.

There is no analogy, we apprehend, to statutes, for example, making depositions taken before examining and committing magistrates evidence where the parties die, or become too ill to attend the trial. Testimony before the grand jury is secret and *ex parte* on behalf of the state, the accused is not present, and cannot cross-examine the witnesses who are not called upon to read over or subscribe these minutes of their testimony, nor are they even certified to by the clerk to be complete or accurate, nor does the clerk take any oath specially as clerk to fully and correctly take down the evidence. These minutes did not go to the jury, under the sanction of the oath of the clerk or any other competent person, as to their completeness or accuracy and are inadmissible for that as well as other reasons.

Nor do we think this case, upon the evidence, like the case of *State v. Owen*, 78 Mo. 367, where it was held

that, the defendant's guilt being otherwise clear, he was not prejudiced by the evidence improperly received. The testimony is conflicting. The case itself is one in which the jury might naturally and unconsciously, perhaps, be easily influenced against the defendant, because of his turpitude or immoral conduct, and by reason of omissions of duty towards the unfortunate child which, if there were such, in legal contemplation could not be held to have caused or hastened its death. The minutes referred to were inadmissible, and their reception in a case of this sort, was, we think, error to the defendant's prejudice.

This whole question has been fully stated and discussed, in a well-considered opinion of this court, recently delivered, where it is expressly held that : "The admission of the minutes of the purported evidence of the witness, Leta Thomas, before the grand jury, written by one of the grand jurors, and which she signed at the request of the foreman, was error." *State v. Thomas*, 99 Mo. 258. The opinion, after pointing out the manner, provided for by statute, of authenticating the evidence of a witness, actually given before a grand jury, uses this further language : "The minutes of the evidence kept by one of their number, unsanctioned by the oath of anybody, cannot be made the substitute for this fair, just and orderly way of getting at the evidence that was actually given before the grand jury."

The opinion in the case of *State v. Thomas, supra,* and the reasoning and authorities there cited, are conclusive of the case at bar, and nothing further need be added.

For these reasons, and those hereinbefore stated, the judgment in this case is reversed, and the cause remanded for further proceedings, in conformity herewith, with the concurrence of all the judges, except BARCLAY, J., who dissent.