FRANK LEIMKUEHLER, HENRY RITTERBUSCH, JOHN PEUSTER, Administrator of Estate of A. C. PEUSTER, CHRIST ZIMMERMAN and HUGO TECKEMEYER v. GEORGE WESSENDORF, T. M. EHLERS, ROY BURGARD, LOT A. DOUGHTY and E. P. ROBERTS, Appellants.—18 S. W. (2d) 445.

Division One, June 7, 1929.

68

*James & Shook, Com P. Storts, W. H. Meschede* and *Lyons & Ristine* for appellants.

*James & James* for appellant *E. P. Roberts.*

*R. H. Duggins, W. D. Summers, C. A. O. Leimbrock* and *Perry S. Rader* for respondents.

88

ATWOOD, P. J.—This was an action for fraud and deceit by Frank Leimkuehler, Henry Ritterbusch, A. C. Peuster, Christ Zimmerman and Hugo Teckemeyer, plaintiffs, against George Wessendorf, T. M. Ehlers, Roy Burgard, Lot A. Doughty and E. P. Roberts, defendants. Respondents, who were plaintiffs below, owned about nine hundred acres of land in Saline County, Missouri, known as Brockway Island, and in this action they sought to recover the

value of certain properties alleged to have been fraudulently concealed and appropriated by defendants in the exchange of this land for a farm and other properties in Cass County, Missouri, owned by persons not parties hereto.

Plaintiffs went to trial on their second amended petition, which, after alleging their ownership of the Saline County land, charged that on the ———— day of May, 1923, defendants were engaged in the real estate business; that on said date they inquired of plaintiffs whether or not they would be interested in exchanging their land for property in Garden City, Cass County, Missouri, consisting of a stock of hardware, implements, fixtures and equipment, known as Garden City Hardware Company, owned by J. M. Kauffman and J. B. Mosser; that afterwards, on the ———— day of May, 1923, plaintiffs in company with defendants went to Garden City for the purpose of looking at said property, and upon their arrival were informed by defendants that a farm of one hundred and seventy acres in Cass County, owned by J. E. Brasfield and subject to a deed of trust securing an indebtedness of $15,000, could also be included in the trade; that defendants as plaintiffs' agents showed them said stock of hardware and said farm and represented that they could exchange their land for the same provided plaintiffs would secure a loan of $5,000 on their land, subject to the approval of said land by the said Brasfield, Kauffman and Mosser; that at the time defendants well knew that the said Brasfield, Kauffman and Mosser had agreed with defendants to transfer certain property for plaintiffs' land, but they did not inform plaintiffs thereof and concealed such fact from them, said property being described in plaintiffs' petition as follows:

"First, the said stock of hardware, implements, fixtures and equipment owned by J. B. Mosser, and J. M. Kauffman, known as the Garden City Hardware Co.

"Second, the said 170 acres in Cass County, Missouri, owned by J. E. Brasfield, subject to a deed of trust for $15,000.

"Third, lot 6, and the northwest forty feet of lot 5, Block 17, in Garden City, Missouri, owned by J. E. Brasfield and J. M. Kauffman.

"Fourth, tin shop contents and equipment owned by J. M. Kauffman and J. E. Brasfield.

"Fifth, the undertaking establishment, including fixtures and equipment owned by J. E. Brasfield and J. M. Kauffman.

"Sixth, stock of furniture, fixtures and equipment owned by J. M. Kauffman and J. E. Brasfield."

That after inspecting plaintiffs' land and after plaintiffs had procured a loan of $5,000 thereon the said Brasfield, Kauffman and Mosser agreed to said exchange. The following allegations also appear in plaintiffs' second amended petition:

"The plaintiffs then made a deed to the Saline County, Missouri, farm to the said Brasfield, Kauffman and Mosser, believing that they were receiving and acquiring title to all of the property included in said exchange, and the said Brasfield made a deed to the 170 acres in Cass County, Missouri, to the plaintiffs, subject to said deed of trust, and the said J. M. Kauffman and J. B. Mosser made and executed a bill of sale to the plaintiffs to the said stock of hardware, implements and equipment, and at the time of the making of said deed and exchange of said properties, the plaintiffs did not know, nor had they been informed by the defendants, that the said Kauffman, Brasfield and Mosser had agreed to include all of the other property described above in said exchange, but the defendants fraudulently stated to the plaintiffs that the property being turned over to them was all that was being given in said exchange by the said Kauffman, Brasfield and Mosser, and fraudulently concealed from the plaintiffs that any other property was being turned over to the defendants, and that by reason of said false and fraudulent representations and concealments made by the defendants, the plaintiffs relying on said representations, closed the deal, and the plaintiffs were defrauded by the defendants out of said other property, which was included in said exchange. That at the time of the consummation of said exchange of properties, the defendants well knew that all of the property received by them in said exchange was the property of the plaintiffs. That at the time of the negotiations and exchange of said plaintiffs' farm the defendants did knowingly, wrongfully, fraudulently and intentionally conceal from the plaintiffs the fact that the said Brasfied, Kauffman and Mosser had agreed with the defendants to include and had included all of the property above described in said exchange owned by the said Brasfield, Kauffman and Mosser, and did fraudulently, wrongfully and knowingly and intentionally permit the plaintiffs to enter into said contract and negotiations of said farm owned by the plaintiffs, for the equity in said 170 acres of land, and stock of hardware, implements, fixtures and equipment. And that said defendants did wrongfully, fraudulently, knowingly and intentionally represent to the plaintiffs that the said Kauffman, Brasfield and Mosser had agreed to include only said equity in said farm of 170 acres, and said stock of hardware, implements, fixtures and equipment, when in fact said defendants knew that said representations were false and fraudulent, and said defendants knew that said plaintiffs were relying upon said representations so made by the defendants, when they made said contract and agreed to said exchange of said properties, and that the said plaintiffs believed when they signed said contract that they were receiving all of the property that the said Mosser, Kauffman and Brasfield had agreed to includ/ in said exchange, and the said defendants knew at the time of the

signing of said contract that said plaintiffs were being defrauded out of said property by concealing from the plaintiffs said facts.''

The petition further alleged that the value of the property thus fraudulently concealed and withheld from plaintiffs and appropriated by defendants was $22,000, for which amount plaintiffs prayed judgment.

Defendants Wessendorf and Ehlers filed joint and separate answers in which they admitted that plaintiffs were the owners of the land described as located in Saline County; that they were plaintiffs' agents in the exchange of said Saline County land for the stock of hardware, implements and equipment known as the Garden City Hardware Company, owned by J. M. Kauffman and J. B. Mosser, and a farm of one hundred and seventy acres in Cass County, Missouri, owned by J. E. Brasfield; and that they were paid the sum of $1125 by plaintiffs as commission for their services in effecting said exchange, but they denied each and every other allegation in plaintiffs' second amended petition contained. The other defendants filed answer in the nature of a general denial.

The case was tried to a jury, resulting in a verdict for plaintiffs and against all of the defendants in the sum of $10,375. From the judgment rendered thereon all of the defendants except Lot A. Doughty have appealed. Since the appeal was taken A. C. Peuster has died and John Peuster, his administrator, has been substituted as a party respondent.

There was evidence tending to show that plaintiffs put their land in the hands of Wessendorf and Ehlers, real estate agents, upon their representation that they could trade it for a stock of hardware and implements; that on the morning of May 19, 1923, three of the plaintiffs went to Slater where they were joined by Wessendorf and Ehlers, and all five proceeded to Marshall, where they stopped in front of defendant Roberts' office; that Wessendorf said that defendant Burgard, Doughty and Roberts were in on the trade and were going with them to help make the deal; that the three last-named defendants joined the party and all proceeded to Garden City; that Doughty told Ritterbusch that there was a farm of 170 acres which, in addition to the hardware and implements, could be had for plaintiffs' land; that Brasfield and Kauffman had authorized their agents Hoey & Clemens to trade their furniture, undertaking stock, tin shop, lots and store, as well as their farm, hardware and implements, for plaintiffs' land, and defendants had knowledge of this fact; that defendants never at any time employed either Burgard, Doughty or Roberts as their agent or authorized them or any one of them to represent them, although from that time on all five of the defendants were present and assisted in practically every step of the negotiations until the final consummation thereof, and

at the same time concealed from plaintiffs the fact that the owners of the farm, hardware and implements had authorized the exchange of their furniture, undertaking business, tin shop, lots and stores, as well as the farm, hardware and implements for plaintiffs' land; that they retained and appropriated all of the Garden City people's said property except the farm, hardware and implements, which were delivered to plaintiffs, and finally converted the same into cash, and the proceeds thereof, amounting to $10,400, together with $1500 commission paid Hoey & Clemens by the Garden City people, and $1125 commission paid by plaintiffs to Wessendorf and Ehlers, were divided equally between eight parties, to-wit, defendants, and Hoey, Clemens and William Wessendorf.

Respondents contend that the evidence shows that "all the defendants acted in concert; that all assumed to act for plaintiffs in making the trade; that all studiously concealed from plaintiffs facts which plaintiffs were entitled to know at their hands; and that all the defendants participated in the fraudulent concealment, and shared equally in the fruits of the fraud, and all are liable as joint fraudfeasors for the value of the properties thus fraudulently retained and appropriated."

Defendants Roberts, Burgard and Doughty testified that prior to the time the properties were exchanged defendants Wessendorf and Ehlers did not know that it was possible to get more than the hardware and implement stock and the 170-acre farm for plaintiffs' land, and that Brasfield had assured them that the Garden City people didn't care how much they got out of the deal, provided they secured something that suited them. Burgard and Doughty claimed that they were really entitled to all of the excess Garden City property because of Brasfield's statement to them, and because of an alleged option contract which was not produced at the trial, but was said to have been executed pursuant thereto at Slater, Missouri, at Wessendorf's home, whereby the Garden City people agreed to convey to them, or such person as they might designate, all of the property which they were willing to exchange, provided they would procure a conveyance of plaintiffs' land. Burgard and Doughty further claimed that they had employed defendant Roberts to aid them in effecting an exchange of the properties. Appellants insist that under the evidence they are not liable either as plaintiffs' agents or as fraudfeasors. The record before us is quite voluminous and further reference will be made thereto where necessary in ruling upon the errors assigned.

The errors here complained of relate to the giving and refusing of instructions and the admission and exclusion of evidence.

I. Appellants first insist that the court erred in giving plaintiffs' requested instruction number one, which is as follows:

"The court instructs the jury that if you find and believe from the preponderance of the evidence, First, that J. B. Mosser, J. E. Brasfield, and J. M. Kauffman employed Hoey & Clemens of Garden City, Missouri, to negotiate a sale or exchange of 170 acres of real estate in Cass County, Missouri, a furniture and fixture stock belonging to Brasfield & Kauffman, and a hardware and implement business belonging to Kauffman & Mosser, and an undertaking business, tin shop and furniture store belonging to Kauffman & Brasfield, and second, you find from the evidence that the plaintiffs employed Wessendorf & Ehlers as their agents to negotiate a sale or exchange of their real estate in Saline County, Missouri, known as the Brockway Island, third, that you find and believe from the evidence that the said Brasfield, Mosser & Kauffman were willing to, agreed to and did exchange all of their property set out in this instruction to said plaintiffs for their real estate described in evidence, fourth, and you further find and believe from the evidence that the other defendants or any of them, participated in the trade or exchange of said properties on behalf of the plaintiffs, or assisted Wessendorf & Ehlers in said exchange, and fifth, if you find and believe from the evidence that said exchange was made, and you further find and believe from the evidence that the defendants or any of them concealed and withheld from the plaintiffs any of the property so agreed to be given and given in said exchange for their said real estate, then all of said defendants participating in the fraud of wrongfully, intentionally and knowingly concealing and withholding and retaining said property, if any, with knowledge that the same in said exchange was to go to the plaintiffs in this cause, then each and every defendant so participating in the retention of said property, if any, are liable to the plaintiffs in damage, in such sum as you find and believe from the evidence was the reasonable market value of said property, if any, on or about May 23, 1923, so withheld and retained from the plaintiffs, and your verdict should be for the plaintiffs, against such defendants, in such sum."

Appellants make seven specifications of error as to this instruction. They say:

1. That "it does not properly declare the law applicable to fraud and deceit but rather assumes fraud on the part of the defendants," citing Lindsay v. Mining Co., 244 Mo. 438, l. c. 453; Allen Estate Assn. v. Fred Boeke & Son, 300 Mo. 575; and Green v. Edmonds, 245 S. W. 378. This instruction specifically required the jury to find from the evidence that Brasfield, Mosser and Kauffman "were willing to, agreed to and did exchange all of their property set out in this instruction, to said plaintiffs for their real estate described in the evidence," that "the other defendants or

any of them participated in the trade or exchange of said properties on behalf of the plaintiffs, or assisted Wessendorf & Ehlers in said exchange,'' and that ''the defendants or any of them concealed and withheld from the plaintiffs any of the property so agreed to be given and given in said exchange for their said real estate.'' It permitted a finding against no defendant who did not wrongfully, intentionally and knowingly participate in the fraud of concealing and withholding and retaining said property, if any, with knowledge that the same in said exchange was to go to the plaintiffs, but it did declare, and properly so, that each and every defendant ''so participating in the retention of said property, if any, is liable to the plaintiffs, in damage, in such sum as you find and believe from the evidence was the reasonable market value of said property, if any, on or about May 23, 1923, so withheld and retained from the plaintiffs.'' Said instruction was within the allegations of the petition, and was clearly supported by the evidence.

2. That ''if said instruction purports to authorize a recovery for the plaintiffs against the defendants on the ground that the defendants were agents for the plaintiffs and made a secret profit, then the measure of damages is wrong.'' The instruction does not undertake to authorize a recovery on the ground that all of the defendants were plaintiffs' agents, but on the ground that they all practiced fraud and deceit in the manner specified upon plaintiffs whether they participated in the exchange in behalf of plaintiffs or merely assisted their duly authorized agents therein. The authorities cited are not in point and the objection is overruled.

3. That ''said instruction authorizes a recovery against all of the defendants if they assisted Wessendorf and Ehlers in said exchange, regardless of what capacity they were working in.'' It is mainly upon this principle involved in the instruction that appellants and respondents split. We think it was proper to so instruct the jury under the evidence in this case. It was plainly the duty of Wessendorf and Ehlers as plaintiffs' agents to make full disclosure to them if they knew that Brasfield, Kauffman and Mosser were willing to give and were giving the furniture, undertaking stock, tin shop, lots and stores, in addition to the hardware and the one-hundred-and-seventy-acre farm; and if Burgard, Roberts and Doughty aided them in concealing that fact from plaintiffs and shared in converting and appropriating the properties thus concealed from plaintiffs they were liable for the fraud to the same extent as were plaintiffs' agents Wessendorf and Ehlers. The doctrine here applicable is thus stated in 2 Mechem on Agency (2 Ed.):

''Sec. 2051. The profits, benefits and advantages resulting from the agency belong to the principal. To secure them to him was the

object for which the agency was created, and it is therefore his right, not only as against the agent, but as against third persons who have dealt with the agent as such, to obtain and enjoy them.

"Sec. 2137. . . . But where the third person conspires with the agent to perpetrate a fraud upon the principal, he is undoubtedly liable. So where the third person, by surreptitious dealing with the agent, or by corrupting him or leading him astray from his duty, has obtained the property of the principal, . . . the defrauded principal, if he acts promptly and before the rights of innocent third parties have intervened, is entitled to recover his property, or . . . to have such other adequate relief as a court of equity may be able to render under the circumstances. The principal in such a case may recover damages, or, where the agent could be charged as a trustee, may recover from the third person what by such collusion he has received from the agent."

Footnote on page 1711, quoting from Nathan v. Blakes, Transv. L. R. S. C. 626:

"Clearly it is the law of England, and I think it is also law in this country, that if a third person fraudulently induces an agent to deceive his principal, to the detriment of the latter and to his own benefit, then he is liable for any damages which the principal may suffer."

This objection is also ruled against appellants.

4. "Because said instruction makes the act of each defendant the act of the other defendants without requiring the jury to find that they were all agents for the plaintiffs or that they conspired together, and does not define what fact would constitute a conspiracy or concerted action." This is but an amplification of the preceding objection. Before the jury could find defendants or any of them liable in damages to plaintiffs they must under this instruction first find that such defendants participated "in the fraud of wrongfully, intentionally and knowingly concealing and withholding and retaining said property, if any, with knowledge that the same in said exchange was to go to the plaintiffs." It is immaterial whether Roberts, Doughty and Burgard were plaintiffs' authorized agents, or voluntarily attempted to induce plaintiffs to make the exchange, or merely injected themselves into the transaction. The gist of the action is fraud and all defendants who participated therein are liable. In 20 Cyc. 84, it is said:

"All persons who are engaged in the perpetration of a fraud are liable for the damages occasioned thereby. Moreover it is not necessary that there be any privity of contract between the person guilty and the person defrauded." Also, see Barnett v. Ground, 304 Mo. 593.

Again, in 20 Cyc. 95, sec. 2, it is said: "A joint action lies against two or more persons participating in a fraud whereby another is injured, although there was no previous conspiracy." Also, see Hobbs v. Boatright, 195 Mo. 695. Also, in 1 Bigelow on Fraud, page 109, it is said: "In regard to defendants the rule at law is that all persons concerned in fraud, whether by preconcert or conspiracy or not, may be joined."

This objection must also be ruled against appellants.

5. That said instruction improperly commingles the theory of fraud and deceit on the one hand, and the theory that defendants were the agents of plaintiffs on the other. If there was an improper commingling of two causes of action in the petition the defect should have been raised by motion, but apparently such was not done. There is no commingling of two causes of action in this instruction. The one cause of action instructed upon is fraud and deceit. Two of the defendants admitted that they were plaintiffs' agents. If they practiced fraud and deceit upon their principals they were liable to respond in damages and all defendants who participated therein were likewise liable to respond in the same manner. The jury were properly so instructed.

6. That "under the pleadings it was admitted that Wessendorf and Ehlers were agents of the plaintiffs and denied that defendants Burgard, Roberts and Doughty were agents, and the instruction does not properly declare the facts which the jury must find in order to constitute the defendants Burgard, Doughty and Roberts agents of the plaintiffs and liable as such." The instruction sufficiently declares the facts and this objection is overruled.

7. That "the second amended petition pleads fraud and deceit of the defendants and this instruction is at variance with the pleadings and proof in the case." Appellants do not elaborate on this point and we are unable to detect any substantial variance.

II. Appellants also assign error in the giving of instruction number two for the following reasons: (1) it is in conflict with instruction numbered one; (2) it does not properly define what is essential and necessary for fraud and deceit; (3) it is in conflict with the petition and evidence in the case, "because the petition doesn't plead and the proof doesn't show that any of the defendants were employed by the plaintiffs to effectuate an exchange of their farm to Kauffman, Mosser and Brasfield;" (4) it "assumes that there was property wrongfully and intentionally concealed from the plaintiffs and assumes that said property was intended to be conveyed to the plaintiffs without requiring the jury

to find such fact;'' (5) it ''authorizes a finding against all of the defendants if the jury find that one or more were employed by the plaintiffs as their agents, merely because the others may have assisted in some way in effecting the exchange, without defining what kind of assistance would make them liable;'' and (6) ''the measure of damages in said instruction is erroneous and wrong.'' The instruction is as follows:

''The court instructs the jury that if you find from the evidence that the plaintiffs employed one or more of the defendants as their agents to negotiate a trade and exchange of the farm of plaintiffs described in the evidence, for real estate and personal property of J. M. Kauffman, J. B. Mosser and J. E. Brasfield located in Cass County, Missouri, and you further find from the evidence that the defendants so employed, if any, engaged, employed or permitted other of the defendants to assist them in said exchange, and you find from the evidence that all those so participating in negotiating said exchange shared in the proceeds of the property wrongfully and intentionally concealed from the plaintiffs, if any, and which was intended to be conveyed to the plaintiffs, then you are instructed that they are all equally liable for the damage, if any, to the plaintiffs by said fraudulent concealment of said property from the plaintiffs, if any, in such sum as you find and believe from the evidence to be the reasonable market value of the property so withheld by the defendants, if any, belonging to the plaintiffs.''

It is apparent at a glance that some of these objections are repetitious, but we do not think that the instruction is open to any of them. Appellants do not indicate and we have been unable to discover wherein it conflicts with instruction number one. Participation in negotiating the exchange of property and sharing in the proceeds of the property fraudulently concealed and withheld from plaintiffs by defendants are things the jury were required to find before they could hold defendants liable, and when read in connection with instruction number one, which correctly defined fraud and deceit, the jury were fully advised as to what was ''essential and necessary for fraud and deceit'' under the pleadings and proof in this case. The instruction does not conflict with the petition and proof because not only does it appear from the petition and evidence that some of the defendants were employed by plaintiffs to effectuate an exchange of their land to Kauffman, Mosser and Brasfield, but the answer of defendants Wessendorf and Ehlers admits that they were so employed. All instructions must be read together and when this instruction is read with instruction number one it is clear that the jury were required to find as a fact that property was wrongfully and intentionally concealed and that such property was intended to be conveyed to plaintiffs. As we have heretofore indicated the law holds every per-

son liable who participates in a fraud by instigating or aiding another, or who benefits by its proceeds, in whole or in part, and this instruction is not erroneous in failing to define what kind of assistance would make the participating defendants liable. The accepted measure of damages in an action at law where defendants have appropriated property and made it impossible for plaintiffs to recover the property itself, is the reasonable market value of the property so withheld, and it was so stated in this instruction. The objection is overruled.

III. Appellants also say that instruction number three "does not properly declare the law covering the measure of damages in this case." The instruction is as follows:

"The court instructs the jury that if you find from the evidence that the plaintiffs are entitled to recover damages from the defendants, or one or more of them, as defined in other instructions, then your verdict should be for such sum as you find from the evidence was the reasonable market value of the property withheld from the plaintiffs, if any, at the time of the closing of said deal and exchange, on or about the 23rd day of May, in the town of Garden City, Missouri, not to exceed the sum of $19,000."

Appellants do not indicate wherein this instruction is deficient. The cited cases, Boyd v. Wahl, 175 Mo. App. 181, and Herron v. Smith, 285 S. W. (Mo. App.) 544, shed no light on the objection raised. We have just approved the use of similar language in instruction number two, and this objection is overruled.

IV. Appellants say that instruction number five is erroneous "because it wholly disregards the testimony of the defendants and is practically a peremptory instruction to find for the plaintiffs, contrary to the law and the evidence in the case, and because it doesn't properly define what it is necessary for the jury to find, in order to find that the defendants were agents of plaintiffs, and because the same law applicable to agency would not apply equally against the defendants Wessendorf and Ehlers, who by their pleadings admitted they were agents of the plaintiffs, and the defendants Burgard, Doughty and Roberts." The instruction is as follows:

"The court instructs the jury that under the law and evidence in this case, neither the defendant, Lot A. Doughty, nor the defendant, Roy Burgard, had any option authorizing them to claim, receive, possess or retain any of the property belonging to J. E. Brasfield, J. B. Mosser and J. M. Kauffman, or the Garden City Hardware Company, or Brasfield & Kauffman, that was intended by them to be included in the exchange of said property to the plaintiffs for the real

estate of plaintiffs described in evidence, in Saline County, Missouri, and you are further instructed that neither said defendant, Lot A. Doughty or Roy Burgard, had any right under any contract in evidence, to retain the furniture, fixtures, undertaking goods and equipment, real estate in Garden City, Missouri, or tin shop, described in evidence, and to withhold the same 'from the plaintiffs [words following in quotation added by the court]—'provided the jury further find and believe from the evidence that in the matters in evidence relating to the exchange of properties between plaintiffs and Brasfield, Mosser & Kauffman, the said Doughty and Burgard were acting for and in behalf of plaintiffs or in connection with and in assistance of others who were acting in such matters in behalf of plaintiffs.' "

This cannot be condemned as a peremptory instruction because it directs no finding for any one, nor is it contrary to or in disregard of the evidence. It simply told the jury that neither Doughty nor Burgard was authorized by the so-called option which they claim to have received, to retain or claim any of the property intended by Brasfield, Mosser and Kauffman to be included in the exchange for plaintiffs' land, or by any other contract in evidence to retain or claim the furniture, fixtures, undertaking goods and equipment, real estate in Garden City, or tin shop, *provided* they found they were acting for plaintiffs in the exchange of the properties or in connection with and in assistance of others who were acting in such matters in plaintiffs' behalf. This was clearly the law and would apply alike to all defendants who were found to be similarly situated.

V. Appellants say that instruction number seven "is an abstract statement which is not applicable to the facts in this case and does not instruct the jury what facts they must find in order to charge the defendant or defendants with fraud." The instruction is as follows:

"The court instructs the jury that an agent is held to the most perfect faith in the dealings with his principal, and if he acts adversely to his employer in any part of the transaction or omits to disclose any interest which would naturally influence his conduct in dealings with the subject of the employment, it amounts to fraud on the part of the agent."

This was a fair statement of the law and in view of the pleadings and evidence in the case it was not a mere abstraction. Appellants do not state wherein it was prejudicial or could have misled the jury, and we rule that it was not reversible error to give it. [Burkhard v. Rope Co., 217 Mo. 483.]

VI. Appellants say that the court erred in adding to defendants' given instruction number three, because it makes the defendants Wessendorf and Ehlers liable if they participated in the division of such property, regardless of how it may have been acquired by the other defendants. The addition required the jury to find that the receipt of this property was "wrongfully concealed from plaintiffs," that its possession was "wrongfully withheld from plaintiffs," and that in its division "defendants knowingly and wrongfully participated." This was a proper declaration of the law on the facts pleaded and proved, and it was not error to give the instruction.

VII. Appellants also say that the court erred in adding to defendants' given instruction number four, because there was no testimony from which the jury might reasonably infer that Burgard, Doughty and Roberts were agents for plaintiffs, and the part added to said instruction was not justified by the evidence. These three appellants defended on the claim that they actually made the trade in pursuance of an option contract which expressly authorized them to retain the very properties which all the defendants did jointly retain. There were facts in evidence from which the jury might reasonably infer that these three defendants were ostensibly acting for plaintiffs.

VIII. Appellants say the court erred in adding to defendants' given instruction number six. The instruction is as follows:
"The court instructs the jury that, if you find and believe from the evidence that Brasfield and Mosser, acting for themselves and Kauffman, entered into a contract by the terms of which they agreed to turn over to L. A. Doughty, or such person as he might designate, all of the Cass County property mentioned in the pleadings, in consideration for which said L. A. Doughty agreed to convey or caused to be conveyed to said Kauffman, Brasfield and Mosser the Brockway Island in Saline County, Missouri, free from incumbrances and agreed to loan or cause to be loaned to said parties $5000 on said island, and that said Doughty and his associates, Burgard and Roberts, did cause to be conveyed to said parties, said Brockway Island, free from incumbrance, and caused to be loaned to said parties $5000 thereon, then whatever part of the Cass County properties which said Doughty and his associates did not use in procuring said deed and loan to the Brockway Island, became and was the property of the said L. A. Doughty and his associates and did not belong to the plaintiffs herein, and the plaintiffs are not entitled to recover from any of the defendants herein for any part thereof [following words in quotation added by the court],

'provided the jury further find and believe from all the evidence herein that neither said Doughty or any of his associates were at such time, or times, acting for or in behalf of plaintiffs or in connection with others who were acting for the plaintiffs.' ''

It would have been improper to have given this instruction as requested by defendants, because it would have deprived plaintiffs of their theory that defendants aided in the perpetration and participated in the fruits of the alleged fraud. It was properly amended by the court.

IX. Appellants insist that the court erred in refusing to give their requested instruction number two because it properly declared the law applicable to defendants Wessendorf and Ehlers. This instruction told the jury that if Wessendorf and Ehlers had no agreement or understanding prior to the exchange of the properties to divide their commission with any other agents then what they did with their commission after the consummation of the exchange "is wholly immaterial and your verdict must be for defendants Wessendorf and Ehlers." What they did with their commissions was a material fact bearing on the issues. Proof that these defendants promptly divided their commissions with the other defendants on the day they were paid tended to show a prior agreement and concerted action among all the defendants to obtain possession of the retained properties, sell them quickly and divide the proceeds equally among the eight. Furthermore, if this instruction had been given the jury could not have returned a verdict for the plaintiffs even though they found from the evidence that those two defendants appropriated the furniture, undertaker's stock, tin shop, fixtures, lots and stores, and each had participated in the proceeds of the sale thereof in addition to receiving his part of their commission of $1125. The instruction was properly refused.

X. Appellants say the court erred in refusing to give defendants' requested instruction number four, because it properly declared the law applicable to an action for fraud and deceit. It is as follows:

"The court instructs the jury, that the burden of proof in this case is upon the plaintiffs to show by a preponderance of the credible testimony in the case, that the defendants, Wessendorf and Ehlers, fraudulently stated to the plaintiffs that no property could be procured for the plaintiffs for the exchange of properties other than the hardware and implement stock and the 170-acre farm in Cass County, Missouri, and that at the time of said fraudulent representations the said defendants knew that said representations were false and made said representations

for the purpose of deceiving the plaintiffs and inducing them to act thereunder, and that the plaintiffs, relying upon said representations, and being ignorant of the falsity thereof, were induced to convey the said Brockway Island to the said Brasfield, Kauffman and Mosser, and that the said plaintiffs were injured and damaged thereby, and unless the plaintiffs have so proven their case by the preponderance of the credible testimony in the case, then your verdict must be for the defendants, Wessendorf and Ehlers.''

This instruction entirely omitted any reference to concealment which was the active element of fraud shown by the evidence. The instruction was properly refused.

XI. Appellants say that the court erred in refusing to give instruction number five requested by defendants Burgard, Doughty and Roberts, because if said defendants were not the agents of plaintiffs there was no liability under the law and the evidence in this case. The instruction is as follows:

''The court instructs the jury, that, if you find and believe from the evidence, the defendants, Burgard, Doughty and Roberts, were not the agents nor the representatives of the plaintiffs, either directly or indirectly, prior to the consummation of the deal, whereby the plaintiffs exchanged the Brockway Island for the hardware and implement stock and the 170-acre farm in Cass County, Missouri, then your verdict must be for the defendants, Burgard, Doughty and Roberts.''

Whether or not these defendants were plaintiffs' agents, if they knowingly and wrongfully seized and retained property that belonged to plaintiffs they were guilty of fraud, and this instruction was properly refused.

XII. Appellants also say that the court erred in refusing to give instruction number seven requested by defendants Burgard, Doughty and Roberts, because said instruction correctly declares the law with respect to said defendants applicable in an action for fraud and deceit. The instruction is as follows:

''The court instructs the jury that the burden of proof in this case is upon the plaintiffs to show by a preponderance of the credible testimony in the case, that the defendants, Burgard, Doughty and Roberts, fraudulently stated to the plaintiffs that no property could be procured for the plaintiffs for the exchange of properties other than the hardware and implements and the 170-acre farm in Cass County, Missouri, and that, at the time of said fraudulent representations, the said defendants knew that said representations were false and made said representations for the purpose of deceiving the

plaintiffs and inducing them to act thereunder and that the plaintiffs, relying upon said representations, and being ignorant of the falsity thereof, were induced to convey the said Brockway Island to the said Brasfield, Kauffman and Mosser, and that the said plaintiffs were injured and damaged thereby, and unless the plaintiffs have so proven their case by a preponderance of the credible testimony in the case, then your verdict must be for the defendants, Burgard, Doughty and Roberts."

This instruction was properly refused and with more reason than we have assigned for refusal to give a similar instruction asked by defendants Wessendorf and Ehlers. Not only did it ignore the fraudulent concealment pleaded and evidence tending to prove the same, but it would not have permitted plaintiffs to recover even if it had been shown that Wessendorf and Ehlers actually made such fraudulent statement.

XIII. Appellants insist that the court erred in admitting incompetent, irrelevant and prejudicial evidence as follows:

1. That plaintiffs' witnesses were permitted to testify that defendants tried to trade a farm in Miller County, Missouri, for plaintiffs' land, and that they tried to induce plaintiffs to trade their land for Mrs. Meng's farm south of Marshall, all for the purpose of proving that defendants in this case were agents for plaintiffs in trading their land for the Garden City property. This testimony was not offered for the purpose of proving agency, but to show, as was stated by plaintiffs' counsel when it was first offered, that defendants had previously been negotiating with plaintiffs to sell their land. Defendants themselves testified to the same facts. The evidence was not prejudicial and the court did not err in admitting it.

2. That plaintiffs' witnesses were permitted "to testify as to misrepresentations about the quality of the soil of the farm in Cass County and to the invoice price or value of the hardware stock, when no such issue was within pleadings." These conversations were competent for the purpose offered, namely, to show all the circumstances and the part defendants took in the entire transaction.

3. That plaintiff, Ritterbusch, was permitted "to testify that the contract which he signed wasn't read over to him when there was no allegation of fraud or deceit practiced in procuring his signature and no claim that the contract didn't correctly state the agreement." It appeared in evidence that certain parties signed this contract in Garden City on a certain day and others signed it later at another place, and certain changes were made therein between the first and second signing. Under these

circumstances it would have been proper for the witness to have stated whether or not the contract was read over to him before he signed it. However, he replied that he was not positive about that. Obviously the evidence admitted was harmless.

4. That plaintiffs' witnesses were permitted ''to testify that subsequent to the closing of the deal for the exchange of properties, the various real estate agents pooled their commissions and interests and divided the same among themselves, without requiring the plaintiffs to prove or show that such an agreement existed prior to the consummation of the contract for the exchange of properties.'' This evidence was properly admitted for reasons we have already stated in connection with the court's refusal of defendants' requested instruction number two.

5. That the court ''permitted plaintiffs' witnesses to testify as to what was in plaintiffs' contract marked Exhibit 'A,' when they signed it the first time, and as to what wasn't in there, and as to what was later put in and, as to whether or not they read it when they signed it or whether or not someone else read it to them, and there was no issue or controversy about any of those matters and not even any claim that the contract wasn't correctly and properly written.'' For the reasons above stated in assignment number three this evidence was competent.

6. That plaintiffs' witnesses were permitted ''to testify as to conversations between Hoey and Clemens and Brasfield, Kauffman and Mosser. This was hearsay testimony.'' This criticism is based in part upon the following objection made by defendants' counsel on the examination of witness Kauffman: ''We object to what the real estate men said.''

Such an objection is too general. Counsel, in behalf of defendant Wessendorf, also objected as hearsay to any conversation between witness Brasfield and Mr. Hoey, while the latter was negotiating the exchange of properties, had outside the presence and hearing of Wessendorf. The witness was permitted to testify that Hoey ''said he had a contract with these fellows whereby we agreed to go over and look within a certain number of days; he said, 'Is that alright'? and I said, 'Yes, we will go and look,' and we did go and look.'' Defendants were not prejudiced thereby.

7. That the court permitted ''plaintiffs' witnesses, Brasfield, Kauffman and Mosser, to testify as to what Garden City property was exchanged for, to-wit, the Brockway Island, when Mr. Hoey negotiated the transaction for them. This was hearsay testimony.'' The only objections cited are those made on the examination of Mr. Kauffman, who was permitted to testify not to conversations had but as to the property

traded by him and the property turned over to the agents. This testimony was properly admitted.

8. That "the court permitted statements made by Burgard outside of the presence of other witnesses; for the purpose of binding all of the defendants." An examination of the record discloses that the court's ruling was quite to the contrary. The court several times indicated that the statements said to have been made by Burgard would not 'go against any of the defendants who were not present at the time they were made.

9. That "the court permitted plaintiffs' witnesses, Kauffman and Mosser, to testify that they intended to convey certain personal property mentioned in Plaintiffs' Exhibit 'E' to the owners of the Brockway Island, when said bill of sale was made out in blank and delivered to the defendant Burgard." The only objection cited in point is one made on the examination of witness Kauffman. He testified that he did not know that the name of the grantee was left blank in the bill of sale. He had already testified as to the property put up and with whom the trade was being made, and the court properly permitted him to state to whom he was intending to transfer the property by this bill of sale.

10. That "the court permitted plaintiffs' witness, Brasfield, to testify as to the contents of a contract which they claimed was made between Brasfield, Mosser and Kauffman on the one hand and Wessendorf, as agent for the plaintiffs, on the other hand, as evidence against the defendants, Burgard, Doughty, Roberts and Ehlers." In view of the fact that there was evidence that all defendants were present at the time and thereafter assisted in practically every step leading up to an exchange of the properties the court properly admitted this evidence.

XIV. Appellants finally say that the court erred in excluding material, competent and relevant testimony on behalf of defendants, as follows:

1. That one of defendants' attorneys was not permitted "to testify that one of the plaintiffs, Mr. Leimkeuhler, told him that the others forced him into bringing this lawsuit." This plaintiff was still a party of record to the proceeding, there was no showing that he was mentally incompetent and the inquiry was clearly improper.

2. That defendant Roberts was not permitted "to testify as to

the contents of a contract which he wrote at Wessendorf's house, after the plaintiffs had been permitted to testify as to the contents of the document.'' The court might well have refused to permit this witness to testify as to the contents of the alleged option contract, because he said that it was lying on the table in Wessendorf's house. when he last saw it, and defendants made no effort to produce it at the trial. However, the court finally permitted him to state its contents, and there is no basis for appellants' complaint.

3. That defendants were not permitted ''to prove by Mr. Roberts, for the purpose of impeaching plaintiffs' witness Brasfield, that in a conversation at Wessendorf's house Brasfield testified that the optional contract written there was merely reducing a previous oral agreement to writing.'' An examination of the record discloses that the court correctly ruled that no foundation had been laid for the attempted impeachment, and hence the evidence offered was properly refused.

XV.  In separate brief and argument filed in behalf of defendant E. P. Roberts it is contended that unless it was shown that Roberts was the agent of plaintiffs or that he made fraudulent representations that misled them his demurrer to the evidence should have been sustained.  As we have already observed, this was an action for fraud and deceit and it was not necessary for plaintiffs to prove that each of the defendants was their authorized agent, or that they were deceived by fraudulent representations made by each.  The active element of fraud in the case consisted of a failure to disclose all of the property that the Garden City people were offering to exchange for plaintiffs' land, and a withholding and conversion of a part thereof by defendants to their own use.  Not only did Roberts have a part in practically every step leading up to the exchange, but there was substantial evidence that he was an active knowing participant in the concealment, retention and conversion of the property wrongfully withheld from plaintiffs.  His wife was in the furniture store, he went down to Garden City the first week after the trade was made, he and his wife were in and out of the store, he received from George Wessendorf a check for $140.60, being one-eighth of the commission paid Wessendorf and Ehlers by plaintiffs, he also received $750 from Hoey and Brasfield, being one-eighth of the $6,000 paid for the furniture stock and stores, and Burgard testified without contradiction that out of the commissions and proceeds pooled Roberts got the same as each of the other seven participants.

Counsel for Roberts also criticise plaintiffs' given instructions one, two and three, but the criticisms are sufficiently met in our above analysis and discussion of these instructions.

In order to cover appellants' somewhat discursive presentation of the errors assigned we have extended this opinion beyond usual bounds. Having found no reversible error the judgment is affirmed.

All concur, except *Frank, J.*, not sitting.