STATE OF MISSOURI EX REL. WILLIAM BERBERICH, Doing Business As BERBERICH DELIVERY Co., Relator, v. GEORGE F. HAID, WILLIAM DEE BECKER and SIMON G. NIPPER, Judges of the St. Louis Court of Appeals.—64 S. W. (2d) 667.

Division Two, October 28, 1933.*

*Leahy, Saunders & Walther* and *J. L. London* for relator.

---

*NOTE: Opinion filed at May Term, 1933, August 29, 1933; motion for rehearing filed; motion overruled at September Term, October 28, 1933.

*Everett Hullverson* and *Staunton E. Boudreau* for respondents.

1226

TIPTON, J.—Original proceedings in certiorari. Relator seeks to quash the record and judgment of the St. Louis Court of Appeals in the case of Mabel Quinn, an infant, by Emma Quinn, Her Next Friend, plaintiff, v. William Berberich, doing business as the Berberich Delivery Company, and reported in 51 S. W. (2d) 153. Plaintiff filed suit in the Circuit Court in the City of St. Louis against relator to recover damages alleged to have been sustained by her through the operation of a motorcycle of the relator. The case was submitted to the jury solely under the humanitarian doctrine. The trial in the circuit court resulted in a judgment of $5000 against the relator, which was affirmed by the St. Louis Court of Appeals.

We find from the opinion of the respondents that at the trial of the case in the circuit court Claude Benton testified on behalf of the plaintiff. A statement signed by him and dated February 21, 1930, was produced that contradicted his testimony given at the trial. To rehabilitate his testimony the trial court permitted statements from a deposition given by the witness to be read in evidence. The deposition was taken the Saturday before the trial began in the circuit court and was, therefore, subsequent to the statement of February 21, 1930. It was the relator's contention that the reading of statements from the deposition was error, and the respondents held that it was error, but not prejudicial, and refused to reverse the judgment of the trial court. That part of the opinion which disposed of this question reads as follows:

"The next insistence of the defendant is that the court erred in permitting counsel for plaintiff to read from the deposition of the witness Claude Benton, taken on the Saturday preceding the date of the trial, on the theory that it tended to rehabilitate his testimony at the trial as against a statement alleged to have been signed by

him February 21, 1930, shortly after the happening of the accident. The court was undoubtedly in error in permitting statements from the deposition to be introduced because, under the authorities, the rehabilitating evidence must be testimony which preceded that of the impeaching evidence. [State v. Creed, 299 Mo. 1. c. 317, 252 S. W. 678, and cases cited; Steele v. Kansas City Sou. Ry. Co., 302 Mo. 207, 257 S. W. 756; Flach v. Ball, 209 Mo. App. 1. c. 400, 240 S. W. 465; Jones v. St. Louis-San Francisco Ry. Co. (Mo.), 253 S. W. 737, 1. c. 741.] The fact that the court erred in this respect need not necessarily result in a reversal on account thereof unless we can say that its admission so prejudiced the case of defendant as to have resulted in a denial to him of a fair and impartial trial. [State v. Maggard, 250 Mo. 1. c. 346, 157 S. W. 354.] We find in the present case that two witnesses testified, in effect, that the motorcycle was seventy-four feet east of where the plaintiff was struck, so that the jury had ample evidence from which to find that the driver of the motorcycle had sufficient opportunity, after he saw or should have seen the plaintiff, to have stopped his motorcycle before striking her. Therefore, since there was ample evidence to sustain such a finding, irrespective of the testimony of Claude Benton, we can see no possibility of defendant having been prejudiced by the error in admitting the objectionable deposition in evidence.''

The cases relied upon by relator, as announcing a rule which the Court of Appeals did not follow, are the following: State v. Creed, 299 Mo. 307, 252 S. W. 678; Jones v. Ry. Co. (Mo.), 253 S. W. 737; State v. Sharp, 183 Mo. 715, 82 S. W. 134; State v. Taylor, 134 Mo. 155, 35 S. W. 92; State v. Grant (Mo.), 79 Mo. 113; State v. Tippett, 317 Mo. 319, 296 S. W. 132; State v. Emma, 324 Mo. 1223, 26 S. W. (2d) 781; State v. Hatfield, 72 Mo. 518; State v. Ashbrook (Mo.), 11 S. W. (2d) 1037; State v. Whelehon, 102 Mo. 17, 14 S. W. 730; State ex rel. v. Ellison, 270 Mo. 645, 195 S. W. 722.

In the case of State v. Creed, supra, an opinion by DAVIS, C., we said:

''The supplementary statement was again inadmissible, for that it was made subsequent to the testimony by which the witness was impeached. Such testimony may not be used to import verity. Out of such procedure would arise corruption and perjury. It would tend to defeat the ends of justice, by supporting the faltering testimony of a discredited, impeached, or perjured witness. Admitting such testimony would resolve itself in a race resulting in rebuttal and surrebuttal, to determine which party could produce the greater number of witnesses in contradiction. This would not determine their credibility and would lead to injustice.''

In the case of State v. Tippett, supra, an opinion by DAVIS, C., we said:

''We are unable to definitely determine from the recital whether

the rehabilitating evidence shown in the testimony of Mrs. Pretzsch occurred before or after the promise of quasi-immunity, although there were questions asked from which it might possibly be surmised that the conversation occurred before motive to fabricate became apparent. Be that as it may, no facts were developed in the testimony of witness Crane tending to show the time the conversation between Tucker and Crane took place. Even if we could say that the testimony of Mrs. Pretzsch was properly admitted, it did not obviate the vice and harm found in the testimony of Crane, for the surrounding facts and circumstances may have induced the jury to give credit to Crane's testimony alone. The crux of the ruling is summed up in the Creed case, supra, grounded on the ruling in Legere v. State, 111 Tenn. 368, reading: 'In no case, so far as we have been able to discover, has corroborative testimony been admitted when it was to the interest of the witness to make a false statement.' To hold evidence of this nature, without the exception, admissible, would announce to one having committed or intending to commit a crime that he may intentionally bolster his trial testimony by relating to subsequently called witnesses a version that would corroborate it, thereby giving it undue force and effect. This would open the flood gates and sanction testimony importing verity, gained by self-serving design.''

Thus we see that in these two cases we reversed the judgment of the trial court because the rehabilitating evidence was subsequent to the prior impeaching evidence.

In Steele v. Kansas City Southern Ry. Co., 302 Mo. 207, 257 S. W. 756, an opinion written by David E. Blair, J., we said:

''We think the foregoing excerpts from the deposition excluded by the trial court disclose that plaintiff, prior to the first trial, had given testimony tending to show that he got upon the north track before reaching the point where he was struck and injured. In other words, such deposition tended to corroborate plaintiff's testimony at the last trial and to rehabilitate him as a witness after his testimony had been impeached by his testimony at the first trial showing a different state of facts.

'' 'Where a witness is impeached by proof of variant acts or statements, relevant evidence of the witness's prior statements correspondent with his testimony are admissible for the purpose of rehabilitation.' [State v. Maggard, 250 Mo. l. c. 347, 157 S. W. l. c. 359, citing State v. Grant, 79 Mo. 113, 49 Am. Rep. 208; State v. Hatfield, 72 Mo. 518; State v. Whelehon, 102 Mo. 17, 14 S. W. 730; State v. Sharp, 183 Mo. l. c. 735, 82 S. W. 134; State v. Taylor, 134 Mo. 109, 35 S. W. 92.]

''On principle it should make no difference in the application of this rule, that the impeaching statements were part of the sworn testimony of the witness upon a former trial, especially where the re-

habilitating statements appear in a deposition under oath. The trial court should have admitted the deposition of February 25, 1911, since it had a tendency to rehabilitate the plaintiff as a witness.''

In this case the judgment of the trial court was reversed because prior to the impeaching statements the witness had given a deposition which in effect substantiated his testimony given at the trial.

In State v. Maggard, supra; State v. Emma, supra; State v. Sharp, supra; and State v. Taylor, supra, we ruled that where the witness had made a statement that was prior to the impeaching statements made by the witness and the prior statement was similar to the testimony given at the trial, that such prior statements made by the witness were admissible to rehabilitate the witness.

In the case of Jones v. Ry. Co., supra, we held that the trial court properly excluded a statement made subsequent to the impeaching statements. That such subsequent statement did not 'tend to rehabilitate the witness.

██ We have uniformly ruled that where the rehabilitating statement was made prior to the impeaching statement, such a statement may be properly admitted for the purpose of rehabilitating the witness, and that where the rehabilitation is subsequent to the impeaching statement, it is not admissible and it is reversible error to admit it in evidence. We do not believe that the respondents in their opinion can fail to follow our decisions by merely saying that the illegally admitted deposition is harmless error. The testimony of this witness cannot be disregarded because it is cumulative. From the fact that two other witnesses testified to similar facts, we cannot say that this witness did not influence the jury in rendering its verdict. With the testimony of this witness excluded, the jury might have found as it did or it might not have so found. It is presumed that error is harmful, unless it is clearly shown to be otherwise. In the case of State ex rel. v. Ellison, supra, GRAVES, J., speaking for the court said:

''Error is presumed to be harmful unless the contrary be made to appear. . . . Nor can the Court of Appeals by merely saying that the erroneous instruction is harmless preclude our review of it here in a case of this character.''

We believe the opinion of the Court of Appeals in the case at bar contravenes the rulings of this court and that the record of that court should be quashed.

██ Relator further contends that the respondents' ruling in holding that the main instruction given on behalf of the plaintiff was harmless error contravenes controlling decisions of this court. This cause was submitted solely upon the humanitarian doctrine. This instruction contained the following clause, ''even though you further find from the evidence that the plaintiff was herself negligent, . . .'' and the relator contends that as neither the petition, the

answer, nor the evidence indicated that the plaintiff was guilty of contributory negligence, the above quoted clause of the instruction made it reversible error. In Kleinlein v. Foskin, 321 Mo. 887, 13 S. W. (2d) 648, we held that under a similar state of facts that the giving of an instruction which told the jury that they were not to consider the question of plaintiff's negligence was not reversible error. We have consistently ruled that contributory negligence is no defense to a case submitted under the humanitarian doctrine. [Grubbs v. Kansas City Public Service Company, 329 Mo. 390, 45 S. W. (2d) 71; Phillips v. Henson, 326 Mo. 282, 30 S. W. (2d) 1065; McGowan v. Wells, 324 Mo. 652, 24 S. W. (2d) 633; Thompson v. Quincy, O. & K. C. Railroad Co., 18 S. W. (2d) 401; Bobos v. Krey Packing Co., 317 Mo. 108, 296 S. W. 157; Causey v. Wittig, 321 Mo. 358, 11 S. W. (2d) 11.] The respondents' ruling that the above-quoted clause does not constitute reversible error, does not contravene any of our decisions.

█ Relator next complains of the respondents' ruling on Instruction No. 2. Respondents in their opinion, with reference to this instruction said:

"The defendant next complains that the court erred in giving Instruction No. 2 in behalf of the plaintiff. That instruction told the jury that a person operating a motorcycle in the city of St. Louis is required to exercise the highest degree of care while so doing, and then the court defined what was meant by highest degree of care. The instruction does not include any direction for a verdict, and certainly cannot be erroneous because of the definition contained therein, and no objection is made to the definition given. It is true that it is error to state to the jury a mere abstract proposition of law coupled with a direction for a verdict, and a refusal to give such an instruction is warranted (Baker v. Scott County Milling Co. (Mo. App.), 43 S. W. (2d) 441, l. c. 447), and it is also erroneous to give an abstract proposition of law when there is no evidence upon which to base it, but our attention is called to no case where the giving of such an instruction as was here given constitutes reversible error. Even the cases cited by the defendant in support of its proposition do not so hold. [Heirs of Strickland v. Heirs of McCormick, 14 Mo. l. c. 170; Benjamin v. Street Ry. Co., 133 Mo. l. c. 290, 34 S. W. 590; Howard v. Fred Schmitt R. & I. Co. (Mo. App.), 7 S. W. (2d) 448, l. c. 451.]"

Section 7775, Revised Statutes 1929, requires the operator of a motor vehicle to use the "highest decree of care" while driving it. Words having a technical meaning should be defined by the court. [Trepp v. State National Bank, 315 Mo. 883, 289 S. W. 540; Turnbow v. Dunham, 272 Mo. 53, 197 S. W. 103.] This is a fair statement of the law and is not a mere abstraction. [Leimkuehler v.

Wessendorf, 323 Mo. 64, 18 S. W. (2d) 445.] Relator does not state wherein it could have misled the jury. In ruling on this instruction the respondents have not contravened any of our decisions.

For the reasons above stated the record and judgment of the respondents are quashed. All concur.